# United States Court of Appeals for the Federal Circuit

---

**DOROTHY L. BIERY, FOR HERSELF AND AS REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSONS,**
*Plaintiff*

**GORDON HOLLOWAY, AS SUCCESSOR AND REPRESENTATIVE OF DECEDENT GEORGE A. HOLLOWAY, STACY E. JUDY TRUST, DATED MARCH 7, 1994,**
*Plaintiffs-Appellants*

**JULIA R. CHALFANT ETVIR TRUST, K.A.K. FARMS, INC., AMERICAN PACKING CORPORATION, COLLINS INDUSTRIES, INC.,**
*Plaintiffs*

**JERRAMY PANKRATZ AND ERIN PANKRATZ, HUSBAND AND WIFE, DONALD E. WEDDELL AND EVANGELINE WEDDELL, HUSBAND AND WIFE, THAD J. COLLING, THICK GON MAR, TRUSTEE OF THE THICK GON MAR REVOCABLE TRUST, DATED NOVEMBER 7, 1995, MICHAEL A. WOODS AND MARCIA J. WOODS, HUSBAND AND WIFE, FLOYD E. MYERS AND BECKY MYERS, HUSBAND AND WIFE, FOR THEMSELVES AND AS REPRESENTATIVES OF A CLASS OF SIMILARLY SITUATED PERSONS,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

———————————

2014-5084

———————————

Appeal from the United States Court of Federal Claims in Nos. 1:07-cv-00675-NBF, 1:07-cv-00693-NBF, Senior Judge Nancy B. Firestone.

———————————

Decided: March 23, 2016

———————————

MARK F. HEARNE II, Arent Fox, LLP, Clayton, MO, argued for plaintiffs-appellants. Also represented by LINDSAY S.C. BRINTON, STEPHEN SHARP DAVIS, MEGHAN SUE LARGENT; DEBRA J. ALBIN-RILEY, Los Angeles, CA.

TAMARA N. ROUNTREE, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOHN C. CRUDEN.

———————————

Before PROST, *Chief Judge,* NEWMAN and STOLL, *Circuit Judges.*

PROST, *Chief Judge.*

Plaintiffs appeal from an order of the Court of Federal Claims awarding them attorney fees under the fee shifting provisions of the Uniform Relocation Assistance and Real Property Act of 1970, 42 U.S.C. § 4654(c). Plaintiffs' counsel asserts that the Court of Federal Claims erred when it made a number of reductions to its requested fee award. Also pending before this court are plaintiffs' motion to supplement the record and plaintiffs' motion to order payment of the uncontested attorney fee amount.

For reasons discussed below, plaintiffs' motion to supplement the record is denied, and the judgment of the Court of Federal Claims is affirmed. Because we affirm the judgment below, plaintiffs' motion for payment of uncontested attorney fees is denied as moot.

BACKGROUND

In 2007, thirteen Kansas landowners brought suit in the Court of Federal Claims against the United States. Plaintiffs alleged that the government had taken their land without just compensation in violation of the Fifth Amendment after the conversion of a rail corridor to a trail under the National Trail Systems Act, 16 U.S.C. § 1247(d). The cases were consolidated the following year.

Five years later, the parties cross-moved for summary judgment on the issue of liability. The Court of Federal Claims granted summary judgment in favor of the United States concerning the claims of five plaintiffs and dismissed those claims.[1] The Court of Federal Claims then certified questions to the Kansas Supreme Court concerning the scope of railroad easements in Kansas. On September 23, 2010, after briefing and holding oral argument on the certified questions, the Kansas Supreme Court determined that it lacked jurisdiction to accept certified questions from the Court of Federal Claims and dismissed the case.

---

[1] On June 4, 2014, we reversed the Court of Federal Claims' summary judgment order regarding three of the five plaintiffs. *Biery v. United States*, 753 F.3d 1279 (Fed. Cir. 2014). Those claims are still pending. For purposes of this appeal and for consistency with the opinion below, we will refer to these plaintiffs as "the unsuccessful plaintiffs" as any potential fee award for work done on their behalf is not at issue here.

The remaining plaintiffs subsequently refiled their motion for summary judgment on the issue of liability with the Court of Federal Claims. On June 9, 2011, the Court of Federal Claims granted plaintiffs' motion. After the Court of Federal Claims issued its opinion, plaintiffs' counsel ("counsel") requested attorney fees under the Uniform Relocation Assistance and Real Property Act of 1970, 42 U.S.C. § 4654(c). In response, the Court of Federal Claims instructed counsel to file a motion for partial summary judgment to determine the method by which the attorney fee award would be calculated.

In its submission, counsel requested that the Court of Federal Claims apply the "national" rate charged by its firm for all work completed at the prevailing market rate. According to counsel, the use of current, rather than historical, rates was based on the contingent nature of the representation, where payment does not take place until successful completion of the case. In its contingent fee agreement with clients, counsel explained that fees were ordinarily paid when they are accrued, usually on a monthly basis. However, the use of rates in effect at the end of the case, rather than the rates in effect when the work took place, would be used based on "the risk that there will be no recovery and that, if a recovery is awarded, the Firm may not be reimbursed for the expenses until some time in the future." J.A. 944.

On November 27, 2012, the Court of Federal Claims issued an opinion on the requested summary judgment motion. In its opinion, the Court of Federal Claims determined that it would calculate attorney fees using the lodestar method, where a reasonable number of hours expended is multiplied by the prevailing rate in the relevant community. The Court of Federal Claims then determined that, for purposes of the case, the hourly rate for work primarily done in St. Louis would be based on the prevailing market rate in St. Louis, Missouri. The Court of Federal Claims noted that, at that time, it could

not, "without further evidence, rule on specific reasonable rates for St. Louis." J.A. 17. The Court of Federal Claims also determined that, due to the "no-interest rule," historical rates, rather than rates in force at the end of litigation, would be used to compute a final award. *See Library of Congress v. Shaw*, 478 U.S. 310, 311 (1986).

Counsel subsequently moved for summary judgment requesting $2,017,987 in attorney fees and $201,924 in costs. Counsel based its fee request, in part, on rates in effect in the Washington D.C. metropolitan area at the time of its request based on the Kavanaugh Matrix, an alternative to the Adjusted *Laffey* Matrix maintained by the United States Attorney's Office.[2] Counsel did not submit any evidence regarding the computation of rates for the St. Louis area. The government cross-moved for summary judgment on the issue of the appropriate hourly rate.

On January 24, 2014, the Court of Federal Claims issued its opinion on attorney fees and costs. In determining the appropriate number of hours, the Court of Federal Claims made a number of adjustments. Specifically, the

---

[2] The parties and cited cases use various terms for these two matrices. *See, e.g.*, *Bywaters v. United States*, 670 F.3d 1221, 1226 n.4 (Fed. Cir. 2012) (referring to the Kavanaugh matrix as the "Updated *Laffey* Matrix"); *Rodriguez v. Sec. of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (using the terms "Laffey Matrix" and "Adjusted Laffey Matrix" interchangeably); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 709–10 (3d Cir. 2005) (referring to "the U.S. Attorney's Matrix" as "ICO's updated Laffey Matrix"). For clarity, we refer to the matrix maintained by the United States Attorney's office as the "Adjusted *Laffey* Matrix" and the matrix developed by Dr. Michael Kavanaugh as the "Kavanaugh Matrix."

Court of Federal Claims found that some the of hours spent on the argument before the Kansas Supreme Court were duplicative, and that the number of hours spent on calculating the attorney fees and costs were excessive. Consequently, the Court of Federal Claims reduced the number of hours spent on those tasks by approximately 75% and 80%, respectively.

In addition, in order to avoid compensating counsel for work done on claims which had been dismissed, the Court of Federal Claims reduced the number of hours expended on the litigation leading up to the first summary judgment motion by 30%. The Court of Federal Claims noted that it made this reduction "[r]ecognizing the validity of plaintiffs' contention that there were overlapping issues between the successful and unsuccessful plaintiffs." J.A. 35. Viewing the number of hours expended on the remainder of the litigation to be excessive, the Court of Federal Claims further reduced those hours by 10%.

To determine the appropriate billing rate, the Court of Federal Claims held that two distinct rates should apply. For hours expended from the commencement of litigation until 2010, when plaintiffs' lead counsel was affiliated with a St. Louis law firm, local St. Louis rates should apply. For the period after 2010, when plaintiffs' lead counsel moved to a law firm based in Washington D.C., local Washington D.C. rates would apply. The Court of Federal Claims determined that, at that time, there was "ample evidence" to determine a St. Louis rate and used a rate based on four attorney fee awards by district courts in the Eastern District of Missouri. J.A. 36–39. For work taking place in Washington D.C., the Court of Federal Claims used the Adjusted *Laffey* Matrix rate, noting that this rate had been used in awarding attorney fees to counsel's firm in two other district court litigations.

In addition to making reductions to the requested billing rate and the number of hours, the Court of Federal Claims made a 30% reduction to costs incurred before the summary judgment motion to account for expenses incurred on the unsuccessful claims.

On January 30, 2014, six days after the Court of Federal Claims issued its attorney fee order, counsel submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain the government's time entry records and costs regarding 101 distinct cases, including the instant cases. Counsel also filed a motion for reconsideration with the Court of Federal Claims on February 5, 2014. The motion made no reference to the then-pending FOIA request. The Court of Federal Claims denied the motion on April 1, 2014.

Counsel timely brought this appeal challenging a number of cuts made by the Court of Federal Claims. On September 15, 2015, after the appeal was filed, the government responded to counsels' FOIA request and provided its time summaries for the instant cases. Shortly thereafter, counsel moved to supplement the record with this new information.

We have jurisdiction of this appeal under 28 U.S.C. § 1295(a)(3).

DISCUSSION

I

We review the Court of Federal Claims' attorney fee determination for an abuse of discretion. *Haggart v. Woodley*, 809 F.3d 1336, 1354 (Fed. Cir. 2016). We review its underlying legal conclusions de novo. *Id.* "An abuse of discretion exists when the trial court's decision is clearly unreasonable, arbitrary or fanciful, or is based on clearly erroneous findings of fact or erroneous conclusions of law." *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 714 F.3d 1289, 1293 (Fed. Cir. 2013) (internal quotation

marks and citations omitted).

Though a trial court has discretion in determining a fee award, it must "provide a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A fee award that is determined through the use of a lodestar calculation carries a "strong presumption" that it represents a "reasonable" attorney fee. *Bywaters v. United States*, 670 F.3d 1221, 1229 (Fed. Cir. 2012) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). Departures from the lodestar figure, once calculated, must be supported by "specific evidence" justifying the award. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010). Ultimately, a fee award must "be adequate to attract competent counsel," but must not "produce windfalls to attorneys." *Hensley*, 461 U.S. at 444 (internal quotation marks and citations omitted).

## II

As a threshold issue, we must decide whether to grant counsel's motion to supplement the record. In general, an appellate court's review is limited to the record presented at the court below. *See Del. Valley Floral Grp. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1380 n.1 (Fed. Cir. 2010). However, we do have authority to supplement the record in rare instances, should the circumstances of the case require it. *See id.* (citing *Dickerson v. Alabama*, 667 F.2d 1364, 1367 (11th Cir. 1982)).

Counsel argues that supplementing the record would be in the interests of justice because the government's time-keeping records for the instant cases are relevant to the reasonableness of the fees requested. Counsel also asserts that the records were not available earlier because the government did not respond to the FOIA request until the appeal was pending, and twenty months after counsel made its first request. Consequently, counsel was unable

to provide this information to the Court of Federal Claims.

Under FOIA, a government agency must provide an initial response to a request within twenty days of receipt. 5 U.S.C. § 552(a)(6)(A)(i). There is no dispute that the government's response to the initial request was not timely. However, the initial request was made after the Court of Federal Claims issued its initial attorney fee determination.

Though counsel is correct that it filed the FOIA request before the Court of Federal Claims' opinion on attorney fees was made final, the timing of the request indicates that the Court of Federal Claims would not have been in a position to consider the documents in deciding the attorney fee request, even if the government had immediately responded.

Had the government responded immediately, counsel's request to the Court of Federal Claims to consider the government's records would necessarily have been part of its motion for reconsideration. Such motions are governed by Rule 59(a)(1), R.C.F.C. Under Rule 59(a)(1), a court, in its discretion, "may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice." *Young v. United States*, 94 Fed. Cl. 671, 674 (Fed. Cl. 2011). A motion for reconsideration must also be supported "by a showing of extraordinary circumstances which justify relief." *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (internal quotation marks and citations omitted).

Counsel has presented arguments as to why this information was unavailable between January 30, 2014, when it initially filed its FOIA request, and September 15, 2015, when it received the relevant documents from the government. However, counsel has not adequately

explained why it did not seek this information sooner. Notably, counsel's motion for reconsideration before the Court of Federal Claims did not even make reference to its then-pending FOIA request.

If, as counsel argues, this information was relevant to the determination of a reasonable number of hours, the FOIA request should have been filed before the initial attorney fee motion, not after the motion had been decided. Under these circumstances, even if counsel had been able to present this new evidence to the Court of Federal Claims when it filed its motion for reconsideration, the Court of Federal Claims would have been within its discretion to deny the motion.

In sum, the information could have been requested in a timely manner in order to influence the underlying decision. Because counsel's submission is based on a request that took place after the Court of Federal Claims' fee order, there is no basis to grant counsel's motion to supplement the record.

## III

With regards to the merits of the fee award, counsel challenges the cuts made based on work done on behalf of the unsuccessful plaintiffs, the Court of Federal Claims' use of the Adjusted *Laffey* Matrix, the use of historical rates, its determination of the standard St. Louis hourly rate, and reductions to the work done for the Kansas Supreme Court argument and fee motions.

## A

Counsel argues that the Court of Federal Claims erred when it reduced the number of hours and costs awarded by 30% to take into account work done on behalf of the unsuccessful plaintiffs. Counsel characterizes this reduction as an overall adjustment to the lodestar figure that must be supported by specific evidence under *Perdue*.

Counsel's characterization of the reduction is incorrect. The Court of Federal Claims did not make an overall reduction of the final award, but, rather, an overall reduction in the number of hours. Though the end result may be mathematically identical, the factors a court takes into account are different, depending on which aspect of the award is under consideration. "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee . . . ." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986). These factors include the measure of success achieved by a party. *See id.* at 562 n.7.

There is no dispute that work done on behalf of the unsuccessful plaintiffs is not recoverable. "Hours that are not properly billed to one's *client* are also not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (citation and internal quotation marks omitted). When multiple claims are brought in a single litigation and involve common questions of law, it may be difficult, if not impossible, to separate out the hours expended on each claim. However, contrary to counsel's assertion, this does not compel the conclusion that all work involved is always compensable. A fee award is subject to a court's discretion and a court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37.

Though a court may reduce an award, it should not do so in a rigid, mechanical way. *Hubbard v. United States*, 480 F.3d 1327, 1333–34 (Fed. Cir. 2007). Here, the Court of Federal Claims did not simply reduce the number of hours based on the number of successful claims but instead came to a 30% reduction after "[r]ecognizing the validity of plaintiffs' contention that there were overlapping issues between the successful and unsuccessful plaintiffs." J.A. 35. This reduction, based on the degree

of success obtained, was within the Court of Federal Claims' discretion.

Therefore, the Court of Federal Claims did not abuse its discretion when it reduced the hours and costs by 30% in order to take into account work done on behalf of the unsuccessful plaintiffs.

B

Counsel argues that the Court of Federal Claims abused its discretion by not applying the Kavanaugh Matrix and instead applying the lower Adjusted *Laffey* Matrix.

In *Laffey v. Northwest Airlines, Inc.*, the District Court for the District of Columbia set out a matrix of reasonable rates for attorneys in the Washington, D.C. metropolitan area who were engaged in complex federal litigation at that time. *See* 572 F. Supp. 354, 371–72 (D.D.C.), *aff'd in part, rev'd in part*, 746 F.2d 4 (D.C. Cir. 1984), *overruled by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) (en banc). This matrix of fees has become known as the "*Laffey* Matrix" and its use has been expressly endorsed by the Court of Appeals for the D.C. Circuit as a "useful starting point" for computing attorney fees. *See Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995). We have not had occasion to determine whether the *Laffey* Matrix is an appropriate starting point for fee awards, but have acknowledged its use by the Court of Federal Claims. *See Bywaters*, 670 F.3d at 1226 & n.4 (Fed. Cir. 2012); *see also Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384–85 (Fed. Cir. 2011) (distinguishing Vaccine Act cases from "complex litigation" described in *Laffey*).

Because the matrix proposed by *Laffey* was based on prevailing market rates for a single point in time, courts have found it necessary to determine similar matrices for

other years using the *Laffey* rates as a starting point. *See Save Our Cumberland Mountains, Inc.*, 857 F.2d at 1525. To this end, two competing approaches have been applied by district courts and the Court of Federal Claims.

The first approach is for courts to use the Adjusted *Laffey* Matrix which is maintained by the United States Attorney's Office. *See, e.g., Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 62 (D.D.C. 2011); *First Fed. Sav. & Loan Assoc. of Rochester v. United States*, 88 Fed. Cl. 572, 586 (Fed. Cl. 2009). Adjustments to this version of the matrix are based on changes to the cost of living in the Washington D.C. metropolitan area as measured by the Consumer Price Index for All Urban Consumers ("CPI-U"). United States Attorney's Office, District of Columbia, *Laffey Matrix – 2014-2015*, at 1, http://www.justice.gov/usao/dc/divisions/Laffey%20Matrix _2014-2015.pdf. The CPI-U measures the average change in price of a market basket of goods and services including food, shelter, and medical and legal services. *See* Bureau of Labor and Statistics, *CPI Detailed Report: Data for December 2015*, at 14, 203, http://www.bls.gov/cpi/cpid1512.pdf.

The second approach is to use the "Kavanaugh Matrix," advanced by economist Dr. Michael Kavanaugh, which makes adjustments to the *Laffey* Matrix based on changes to the Legal Services Index ("LSI") component of the Consumer Price Index ("CPI"). *Bywaters*, 670 F.3d at 1226 & n.4; *Eley v. District of Columbia*, 999 F. Supp. 2d 137, 150 (D.D.C. 2013), *vacated and remanded by* 793 F.3d 97 (D.C. Cir. 2015). The motivation behind these adjustments is to provide adjustments that solely capture the market for legal services and do not take other consumer goods into account, such as food, housing, gas, and clothing. *See Salazar v. District of Columbia*, 750 F. Supp. 2d 70, 73 (D.D.C. 2011).

Both approaches are subject to criticism and no circuit has expressly adopted one over the other. *See Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 64–65 (D.C. Cir. 2015); *Bywaters*, 670 F.3d at 1226 & n.4; *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 709–10 (3d Cir. 2005). The Adjusted *Laffey* Matrix has been criticized because it takes a broad basket of goods and services into account, including food and fuel, and may thus yield results that are higher or lower than the average rates private consumers of legal services in the Washington, D.C. metropolitan area actually pay. *See Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14–15 (D.D.C. 2000). The Kavanaugh Matrix has been criticized for its use of the national CPI, and may thus not be an accurate measure of the relevant community, here the Washington D.C. metropolitan area. *See Eley*, 999 F. Supp. 2d at 152.

The criticisms levied against both the Adjusted *Laffey* Matrix and the Kavanaugh Matrix are well-founded and reasonable. Conversely, the arguments for each are also compelling. Consequently, we decline to exclusively endorse either for use in a lodestar calculation. The decision to use either matrix as a starting point to determine a lodestar is within the discretion of a trial court. *See Interfaith Cmty. Org.*, 426 F.3d at 709 ("[T]he original Laffey Matrix is an appropriate starting point . . . ."); *Covington*, 57 F.3d at 1109 (noting that the Adjusted *Laffey* Matrix provides a "useful starting point."). However, it would be an abuse of discretion for a court to blindly use either matrix without considering all the relevant facts and circumstances. *See Eley v. District of Columbia*, 793 F.3d 97, 104 (D.C. Cir. 2015). As previously noted, though a court has broad discretion in computing a lodestar, the court must "provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437. This includes the decision to use either the Adjusted

*Laffey* Matrix or the Kavanaugh Matrix and any departure, or no departure, from the rates they suggest.

Here, the Court of Federal Claims compared the Adjusted *Laffey* Matrix rate with fees awarded to counsel's law firm in two district court cases and found those rates lower than, if not comparable to, the Adjusted *Laffey* rates. In doing so, the Court of Federal Claims explained that the Adjusted *Laffey* rate was sufficient to adequately compensate counsel, but not so high as to be a "windfall" to counsel. *See Hensley*, 461 U.S. at 444.

Counsel argues that it was an abuse of discretion for the Court of Federal Claims to rely on fee awards from other jurisdictions in determining the fee award in this case. However, because counsel had previously requested fees based on a "national" rate, the use of awards from other jurisdictions as a comparative base was reasonable.

Therefore, the Court of Federal Claims did not abuse its discretion in its determination that the Adjusted *Laffey* Matrix provided a reasonable rate for the lodestar calculation.

C

Counsel asserts that it was legal error for the Court of Federal Claims to find that the "no-interest rule" applied to its fee request and to require that historical rates be used.

Under the no-interest rule, recovery of interest on an award of attorney fees is barred unless an award of interest is "expressly and unambiguously authorized by statute." *Chiu v. United States*, 948 F.2d 711, 719 (Fed. Cir. 1991). This rule has been broadly read to reach any attempt to provide additional compensation based on a delayed payment. *Shaw*, 478 U.S. at 322 ("Interest and a delay factor share an identical function. They are designed to compensate for the belated receipt of money."). "Thus, whether the loss to be compensated by an increase

in a fee award stems from an opportunity cost or from the effects of inflation, the increase is prohibited by the no-interest rule." *Id.*

Counsel argues that the fee award should reflect a fee that a private client would pay in the private market and that, in the private market, the appropriate rates to be used are those in effect when payment is made. This argument is undercut by counsel's own fee agreement, which notes that fees are ordinarily paid when the work is performed, not at the end of the case. According to the agreement, the contingent nature of the representation required a departure from the normal rule because "the Firm may not be reimbursed for the expenses until some time in the future." J.A. 944. By its own language, this departure is an attempt to obtain delay compensation and is therefore barred by the no-interest rule. *See Chiu*, 948 F.2d at 720.

Therefore, the Court of Federal Claims did not err when it applied historical rates under the no-interest rule.

D

Counsel argues that there was not sufficient evidence for the Court of Federal Claims to determine a reasonable rate for the St. Louis legal market. This argument is primarily based on the Court of Federal Claims' initial statement that it could not, "without further evidence, rule on specific reasonable rates for St. Louis." J.A. 17. According to counsel, the Court of Federal Claims' later statement that there was "ample evidence" available, J.A. 36, is in contradiction with this initial statement.

It was counsel's burden to provide evidence tending to show an appropriate rate in the St. Louis area. *Hensley*, 461 U.S. at 437. Counsel failed to provide any evidence on this issue. In the absence of contradictory evidence, the Court of Federal Claims applied rates based on four district court cases from the Eastern District of Missouri.

This was not an abuse of discretion. When a party has a burden of production, it must submit evidence in order to meet the burden. When the burden has not been met, it is not the responsibility of a court to delay proceedings and request additional evidence from counsel; it rules on the record before it. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

This is especially true here. Counsel was on notice of the Court of Federal Claims' intent to apply local St. Louis rates in 2012. It was counsel, not the government, that subsequently moved for a final fee award. Counsel cannot now credibly claim that it was surprised when the Court of Federal Claims did what it stated it would do and based its rate calculation on the relevant information available. It was counsel's responsibility to produce evidence rebutting the rate evidence presented. It failed to do so.

Therefore, the Court of Federal Claims did not abuse its discretion in its determination of an appropriate hourly rate for the St. Louis legal market.

We have reviewed the remaining challenged fee reductions, including the reduction in hours for work performed in support of the Kansas Supreme Court arguments and the fee award, and find that the Court of Federal Claims has adequately supported them in its opinion.

## CONCLUSION

For the foregoing reasons, counsel's motion to supplement the record is denied. Counsel's motion to order payment of the uncontested legal fees and expenses is denied as moot. The judgment of the Court of Federal Claims is affirmed.

**AFFIRMED**

### Costs

Each party shall bear their own costs.