NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BRENDAN HICKEY,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2018-1585, 2018-1650

---

Petitions for review of the Merit Systems Protection Board in Nos. PH-1221-15-0013-A-1, PH-1221-15-0013-P-1.

---

Decided: March 22, 2019

---

NICHOLAS WOODFIELD, The Employment Law Group, PC, Washington, DC, argued for petitioner. Also represented by ROBERT SCOTT OSWALD.

RETA EMMA BEZAK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by ALISON VICKS, ROBERT EDWARD KIRSCHMAN, JR., FRANKLIN E. WHITE, JR., JOSEPH H. HUNT.

---

Before WALLACH, CHEN, and HUGHES, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Petitioner Brendan Hickey seeks review of two Merit Systems Protection Board ("MSPB") final decisions that granted-in-part his request for attorney fees, *see Hickey v. Dep't of Homeland Sec.* (*Hickey II*), No. PH-1221-15-0013-A-1, 2017 WL 5989840 (M.S.P.B. Nov. 30, 2017) (J.A. 1–30), and denied-in-part his request for consequential and compensatory damages, *see Hickey v. Dep't of Homeland Sec.* (*Hickey III*), No. PH-1221-15-0013-P-1, 2018 WL 702264 (M.S.P.B. Jan. 29, 2018) (J.A. 31–55).[1] We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012). We affirm-in-part, vacate-in-part, and remand.

## BACKGROUND[2]

Mr. Hickey was employed by the Department of Homeland Security ("DHS") as a Special Agent assigned to work

---

[1]   Relevant here, an administrative judge ("AJ") issued two initial decisions, one on November 30, 2017, *see* J.A. 1–30, and one on January 29, 2018, *see* J.A. 31–55, each of which became final when Mr. Hickey did not file a petition for review, *see* J.A. 21; *see also* 5 C.F.R. § 1201.113 (2018) (providing "[t]he initial decision of the judge will become the [MSPB]'s final decision [thirty-five] days after issuance" unless, inter alia, "any party files a petition for review"). Therefore, we refer to the Initial Decisions as the MSPB's Final Decisions.

[2]   The AJ also issued a decision on the merits of Mr. Hickey's underlying individual right of action ("IRA") appeal, which Mr. Hickey does not petition for review of before this court. *See Hickey v. Dep't of Homeland Sec.* (*Hickey I*), No. PH-1221-15-0013-W-2, 2017 WL 1848111 (M.S.P.B. May 4, 2017) (J.A. 71–123). Because the parties do not dispute the facts as recited by the AJ, *see generally*

in DHS's Providence, Rhode Island office. J.A. 72. The Providence office serves as a satellite office to the Boston, Massachusetts office. J.A. 72. In January 2013, Mr. Hickey filed a Complaint of Possible Prohibited Personnel Practice with the U.S. Office of Special Counsel ("OSC"), alleging DHS retaliated against him in response to his whistleblowing activity. J.A. 77. Specifically, Mr. Hickey asserted that he disclosed to both his supervising officials and to OSC that he "refused to obey an order that would" have "require[d] him to violate the law." J.A. 32. Shortly thereafter, DHS reassigned Mr. Hickey from his home and official Post of Duty in Providence to the Document Benefit Fraud Task Force ("DBFTF"), which was located sixty-three miles away in Boston, suspended him twice, and denied him a performance award. J.A. 32.

In October 2014, Mr. Hickey filed an IRA appeal with the MSPB alleging that DHS "had taken several personnel actions in reprisal for his protected disclosures and protected activities" as prohibited by 5 U.S.C. § 2302(b)(8), (9) (2012).[3] J.A. 71. The AJ held that Mr. Hickey made protected disclosures and that they were a contributing factor in DHS's decision to take prohibited personnel actions against him. J.A. 110. The prohibited personnel actions included temporarily assigning him to work sixty-three miles from his home and normal workstation for nineteen months, suspending him twice, and denying him a

---

Pet'r's Br.; Resp't's Br., we cite to the facts as presented by the AJ in *Hickey I–III* for ease of reference.

[3] Pursuant to 5 U.S.C. § 2302(b)(8), (9), an employer is prohibited to take personnel action against an employee for, inter alia, "any disclosure of information by an employee or applicant reasonably believes evidences . . . any violation of any law, rule, or regulation," or because the employee "refus[ed] to obey an order that would require the individual to violate a law, rule, or regulation."

performance award.  J.A. 110; *see* J.A. 110 (granting Mr. Hickey's request for corrective action "as to the denial of a performance award, the reassignment of the DBFTF in Boston, and the 3-day and 1-day suspension[s]" and denying the request for corrective action "as to the assignment to the FDA task force and to Puerto Rico").  The AJ ordered DHS to cancel Mr. Hickey's temporary assignment to the DBFTF in Boston to the extent the assignment remained in effect, and to eliminate all references to that assignment from Mr. Hickey's personnel records.  J.A. 110.

In August 2017, Mr. Hickey filed a Motion for Attorney Fees.  *See* J.A. 124−66.  In support of his Motion for Attorney Fees, Mr. Hickey submitted his retainer agreements with his current counsel, The Employment Law Group, PC ("TELG"), and his prior counsel, Corso Law, LLC.  *See* J.A. 129.  Each of Mr. Hickey's named counsel are located in Washington, DC.  *See* Oral Arg. at 15:02–05, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2018-1585.mp3 (agreeing by counsel with the court that "this was a DC firm").  In Mr. Hickey's retainer agreement, TELG agreed to represent Mr. Hickey at hourly rates of "$490.00 per hour" for principals, "$490.00 per hour" for of counsel, "between $245.00 and $290.00 per hour" for associates, "$145.00 per hour" for law clerks and investigators, and "$70.00 per hour" for project assistants. J.A. 10.  Mr. Hickey also explained that TELG customarily charges rates determined with the *Laffey* Matrix.[4]  J.A.

---

[4]   The "*Laffey* Matrix" is an array of hourly rates for attorneys of varying experience levels prepared by the Civil Division of the U.S. Attorney's Office ("USAO") for the District of Columbia.  *See Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983); *see also Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (explaining that "plaintiffs may point to such evidence as an updated version of the *Laffey* [M]atrix or the [USAO's] matrix, or

129. In *Hickey II*, the MSPB granted-in-part and denied-in-part Mr. Hickey's requested payment. J.A. 30. Specifically, the MSPB determined that Mr. Hickey was entitled to attorney fees in the amount of $109,585.00 and an award of expenses in the amount of $12,547.47, for a total of $122,132.47. J.A. 30. The MSPB's calculation of attorney fees was based on the rates used in "recent decisions in the U.S. District Court for the District of Maryland [Greenbelt Division]" ("Maryland rate") "as reasonable hourly rates" instead of the hourly rates supplied by Mr. Hickey. J.A. 11, 12.

Mr. Hickey also requested an award of consequential and compensatory damages in connection with his IRA appeal. *See* J.A. 167–210. In *Hickey III*, the MSPB granted-in-part Mr. Hickey's request for an award of compensatory damages in the amount of $10,000 and denied Mr. Hickey's request for consequential damages. *See* J.A. 53–55.

## DISCUSSION

On appeal, Mr. Hickey contends the MSPB erred by (1) "den[ying his] counsel's requested hourly rates in his fee petition and instead award[ing] rates relying on [the] unrelated [Maryland rate]," Pet'r's Br. 16, (2) "partially grant[ing his] request for compensatory damages and

---

their own survey of prevailing market rates in the community"). While we have "decline[d] to exclusively endorse" use of the *Laffey* Matrix in calculating attorney fees, we have explained that the "District Court for the District of Columbia set out [this] matrix of reasonable rates for attorneys in the Washington, DC metropolitan area who were engaged in complex federal litigation at that time." *Biery v. United States*, 818 F.3d 704, 714 (Fed. Cir. 2016); *see Bywaters v. United States*, 670 F.3d 1221, 1226 n.4 (Fed. Cir. 2012) ("The 'Updated *Laffey* Matrix' is a billing survey of District of Columbia market rates.").

award[ing] him only $10,000 despite [his] uncontroverted evidence documenting years of substantial mental anguish and harm," *see id.* at 35, and (3) "den[ying his] motion for consequential damages when it found that he was not entitled to per diem expenses," *see id.* at 27. After setting forth the applicable standard of review, we address Mr. Hickey's arguments.

## I. Standard of Review

We will uphold a decision of the MSPB unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1), (3). The MSPB abuses its discretion when "the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Tartaglia v. Dep't of Veterans Affairs*, 858 F.3d 1405, 1407–08 (Fed. Cir. 2017) (internal quotation marks and citation omitted). We review the MSPB's factual findings for substantial evidence. *Parrott v. Merit Sys. Prot. Bd.*, 519 F.3d 1328, 1334 (Fed. Cir. 2008). "Substantial evidence is more than a mere scintilla of evidence, but less than the weight of the evidence." *Jones v. Dep't of Health & Human Servs.*, 834 F.3d 1361, 1366 (Fed. Cir. 2016) (internal quotation marks and citations omitted). "The petitioner bears the burden of establishing error in the MSPB's decision." *Jenkins v. Merit Sys. Prot. Bd.*, 911 F.3d 1370, 1373 (Fed. Cir. 2019) (internal quotation marks, brackets, and citation omitted).

## II. Attorney Fees

### A. Legal Standard

Pursuant to 5 U.S.C. § 7701(g)(1), the MSPB "may require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment if the employee or applicant is the prevailing

party" and the MSPB "determines that payment by the agency is warranted in the interest of justice." Similarly, 5 U.S.C. § 1221(g) provides that "[c]orrective action shall include attorney's fees and costs," where "an employee . . . is the prevailing party before the [MSPB], and the decision is based on a finding of a prohibited personnel practice, the agency involved shall be liable . . . for reasonable attorney's fees and other reasonable costs incurred." 5 U.S.C. § 1221(g)(1)(B), (g)(2); *see* 5 C.F.R. § 1201.202(a) (authorizing the MSPB to award "attorney fees" under §§ 1221(g) and 7701(g)).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In determining the appropriate fee rate, "[a] representation contract specifying hourly rates is evidence that the contract rates are consistent with local market rates, because the client freely agreed to pay the rates by entering into the contract." *Willis v. U.S. Postal Serv.*, 245 F.3d 1333, 1340 (Fed. Cir. 2001). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate . . . hourly rates." *Hensley*, 461 U.S. at 437.

The petitioner requesting attorney fees must support their request with "evidence substantiating the amount of the request." 5 C.F.R. § 1201.203. This evidence must include, inter alia, "a copy of the terms of the fee agreement (if any)" and "a statement of the attorney's customary billing rate for similar work, with evidence that th[e] rate is consistent with the prevailing community rate for similar services in the community in which the attorney ordinarily practices." *Id.* Similarly, in other contexts, fee awards are based on "market rates for the services rendered." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283 (1989).

B. The MSPB Abused Its Discretion by Applying an Unrelated Cap on Attorney Fees

The MSPB held that Mr. Hickey "established that he is entitled, in the interest of justice, to an award of attorney fees in the amount of $109,585.00 and an award of expenses in the amount of $12,547.47," which amounts to "a total award of $122,132.47." J.A. 20.[5] Specifically, despite Mr. Hickey's request for fees based on customary DC hourly rates, i.e., the *Laffey* Matrix rates, the MSPB determined that the Maryland rate should be "adopt[ed] . . . as reasonable hourly rates" and rejected Mr. Hickey's proffered rates. J.A. 11–12. Mr. Hickey avers that the MSPB improperly "denied the hourly rates in [his] fee petition [by] award[ing] rates derived from an unrelated [U.S.] District Court decision." Pet'r's Br. 16. We agree with Mr. Hickey.

The MSPB abused its discretion by, sua sponte, relying upon the Maryland rate without explaining how those rates are related to the customary billing rate of Mr. Hickey's hired law firm or to the rates charged and received by attorneys in the same community in similar cases. Rather than awarding the agreed-upon rates between Mr.

---

[5]    It is undisputed that Mr. Hickey is the prevailing party because the MSPB's *Hickey I* decision materially changed the legal relationship between Mr. Hickey and the DHS when the MSPB found that his protected disclosures were a contributing factor in DHS's decision to take certain prohibited personnel action against him. J.A. 122; *see Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (explaining that a prevailing party is entitled to attorney fees if he obtains an "enforceable order" that "material[ly] alter[s] . . . the legal relationship of the parties"). In *Hickey III*, the MSPB also provided actual relief on Mr. Hickey's claims by ordering the DHS to pay Mr. Hickey consequential damages. *See* J.A. 50–52.

Hickey and his attorneys or awarding the higher rates from the *Laffey* Matrix, the MSPB applied the Maryland rate from a local rule used in an unrelated jurisdiction. J.A. 11–12. As evidence of the appropriate hourly rates, Mr. Hickey submitted his signed retainer agreement with TELG, which was based on the *Laffey* Matrix rates in 2014. *See* J.A. 129; *see also* J.A. 217 (acknowledging, by DHS, that TELG customarily charges rates determined by the *Laffey* Matrix). Mr. Hickey also submitted affidavits of other attorneys located in the Washington, DC area, stating that the rates charged by TELG are "within the customary market rates for attorneys seeking fee awards in a [Whistleblower Protection Act of 1989 ('WPA')] claim in . . . Washington, DC." J.A. 129–30 (referring to declarations by attorneys in Washington, DC); *see* Pub. L. No. 101–12, 103 Stat. 16 (codified in scattered sections of 5 U.S.C.). In relying on the Maryland rates, the MSPB did not provide *any* explanation as to why the judge was departing from the retainer agreement. *See* J.A. 5–20. Similarly, the MSPB applied the Maryland rate for the first set of fees awarded and the retainer agreement rate for awarding supplemental attorney fees with no reason for using two different fee calculations, *see* J.A. 11−12; *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48 (1983) (explaining that "an agency must cogently explain why it has exercised its discretion in a given manner"); Oral Arg. at 20:02–10, (Q: "And did the judge discuss that [the Maryland rate local rules are guidance] in any fashion?" A: "No, your honor."). Despite the MSPB's reliance on Maryland rates, TELG is located in Washington, DC and represents clients, inter alia, in Washington, DC. J.A. 31. The MSPB's failure to adequately explain its selection of the Maryland rate constitutes an abuse of discretion. *See Motor Vehicle Mfrs.*, 463 U.S. at 48 (explaining that an agency must explain its reasoning "for exercis[ing] its discretion in a given manner" under the Administrative Procedure Act, 60 Stat. 237 (1946) (codified in scattered sections of 5 U.S.C.)). In

contrast, the record contained the type of hourly rate evidence that we have approvingly cited to the in the past, *see Willis*, 245 F.3d at 1339–40 (explaining that "[a] representation contract specifying hourly rates is evidence that the contract rates are consistent with local market rates"); *see also Biery*, 818 F.3d at 714 (acknowledging that the *Laffey* Matrix includes "reasonable rates for attorneys in the Washington, DC metropolitan area" (punctuation omitted)), but the MSPB failed to explain why these rates were unusable in this context or why its selected Maryland rate should be preferred, *see* J.A. 11–12. Accordingly, the MSPB abused its discretion by relying on rates established in an unrelated case from a different jurisdiction to calculate Mr. Hickey's attorney fee award.

While DHS argues that the MSPB did not abuse its discretion by using the Maryland rate because rates should not exceed the rates set forth in the retainer agreement, *see* Resp't's Br. 20, the fees awarded using the Maryland rate, which caps fee petition rates, are lower than the fees agreed to in the retainer agreement, *see* Oral Arg. at 25:16–28, (explaining, by the court, "[t]hat's what makes [the retainer agreement] reasonable, they're charging less than what they would normally be entitled to as a DC firm"). TELG customarily practices in Washington, DC as evinced by the record, J.A. 393 (explaining that one of Mr. Hickey's attorneys "is the President Elect of the Washington Employment Lawyers Association"); *see* Oral Arg. at 15:02–05 (agreeing, by the Government, with the court that "this was a DC firm"), and the rates charged in the retainer agreement were lower than the customary billing rates of other law firms in the Washington, DC metro area and significantly less than they are normally entitled to as Washington, DC law firm pursuant to the *Laffey* Matrix. *See* J.A. 11 (explaining, by the MSPB, that "the *Laffey* [M]atrix rates do not correspond with the rates agreed to in the [retainer] agreement" because the *Laffey* Matrix rates are higher than those in the retainer agreement). The DHS

provided no evidence to the MSPB that the Washington, DC-based law firm should be awarded rates of a different jurisdiction.

### III. Compensatory Damages

### A. Legal Standard

"If the [MSPB] orders corrective action . . . such corrective action may include," inter alia, "compensatory damages (including interest, reasonable expert witness fees, and costs)." 5 U.S.C. § 1221(g)(1)(A), (g)(1)(A)(ii).[6] "Compensatory damages include pecuniary losses, future pecuniary losses, and nonpecuniary losses such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life." 5 C.F.R. § 1201.202(c) ; *see Bohac v. Dep't of Agric.*, 239 F.3d 1334, 1341 (Fed. Cir. 2001) (stating, in an appeal from the MSPB, that "[c]ompensatory damages are divided into two categories: pecuniary and non-pecuniary"). "Non-pecuniary compensatory damages

---

[6]    Awards of compensatory damages were introduced as a remedy available to whistleblowers with the enactment of the Whistleblower Protection Enhancement Act of 2012 ("WPEA"). Pub. L. No. 112–199, § 107, 126 Stat. 1465 (2012). The WPEA took effect on December 27, 2012, and added compensatory damages to the available corrective actions the MSPB is authorized to order in whistleblower retaliation cases. *See id.* Not only does it create new liabilities, i.e., compensatory damages, it also does not cap the amount that may be awarded, unlike the similar liabilities associated with findings of intentional discrimination. *See id.*; *see also Hicks v. Merit Sys. Prot. Bd.*, 819 F.3d 1318, 1322 (Fed. Cir. 2016) (explaining that "[u]nder the WPEA . . . when an agency retaliates against an employee for filing a previous appeal related to whistleblowing, the [MSPB] is empowered to order such corrective action as it deems appropriate").

include compensation for bodily harm and emotional distress and are awarded without proof of pecuniary loss." *Bohac*, 239 F.3d at 1341 (citation omitted). However, compensatory damages are designed to compensate the petitioner for actual harm, not to punish the agency. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (explaining in the context of a Due Process Clause of the Fourteenth Amendment case that "[c]ompensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct'" (citing Restatement (Second) of Torts § 903 (1979))); *see Reese v. United States*, 24 F.3d 228, 231 (Fed. Cir. 1994) (explaining, in a U.S. Court of Federal Claims appeal, that "compensatory damages" simply "compensate the injured party for the *injury sustained, and nothing more*" (emphasis added)).

B. Substantial Evidence Supports the MSPB's Determination that Mr. Hickey Is Entitled to an Award of $10,000 in Compensatory Damages

The MSPB determined that Mr. Hickey was entitled to a partial award of the compensatory damages he sought and awarded "$10,000 in compensatory damages." J.A. 43; *see* J.A. 31–55. The MSPB explained that "the extent and duration of the emotional and physical harm caused by the agency's actions [were] limited," J.A. 43, because Mr. Hickey "failed to provide objective and other evidence linking most of his complaints of mental anguish, and harm to his reputation, health, and familial relationships to the [DHS's] unlawful retaliation," J.A. 41. In arriving at the $10,000 award, the MSPB supported its determination with citation to similar cases awarding from $5,000 to $20,000 for limited emotional and reputational harm, in addition to crediting evidence that the assignment to Boston caused Mr. Hickey emotional and reputational harm, as well as time away from his family. J.A. 43. Mr. Hickey asserts that he is entitled to a larger "award than what the

M[SP]B granted" because "the MSPB's award of $10,000 cannot be reconciled with the evidence proffered by Mr. Hickey and is inconsistent with the amount awarded in similar cases." Pet'r's Br. 35. We agree with the MSPB.

Substantial evidence supports the MSPB's compensatory damages award. The MSPB credited Mr. Hickey's and his wife's statements that asserted his assignment to Boston led to emotional harm, inconvenience, pain and suffering, mental anguish, and loss of enjoyment of life. J.A. 43 (citing J.A. 183). These statements, however, *did not connect the emotional harm* to, and therefore did not prove that the emotional harm "was actually caused by," the actual harm resulting from the retaliatory activities that the MSPB previously determined were unlawful. *See* J.A. 110; *Carey v. Piphus*, 435 U.S. 247, 264 (1978) (holding, for a claim of "mental and emotional distress," that "neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages *without proof* that such injury actually was caused" (emphasis added)). For example, Mr. Hickey did not link the physical and emotional symptoms to the misconduct of the DHS because neither statement provided dates of the symptoms or their duration to demonstrate that the harm resulted from the DHS's actions. J.A. 43 (crediting, by the MSPB, statements of Mr. Hickey and his wife, which explained that Mr. Hickey's "emotional distress . . . manifested into physical symptoms"). Additionally, Mr. Hickey's request for compensatory damages broadly includes *all* his original claims in his IRA action rather than focusing upon the three instances of misconduct for which the MSPB determined he is entitled to recover. *See* J.A. 110 (explaining that the three instances of unlawful misconduct were (1) the "denial of Mr. Hickey's performance award"; (2) his temporary "reassignment" to Boston; and (3) his "[two prior] suspensions"). Mr. Hickey cannot recover compensatory damages for conduct other than these three instances of misconduct. *Sloan v. U.S. Postal Serv.*, No. AT-0752-94-0387-P-1, 1997

WL 693605 (M.S.P.B. Oct. 29, 1997) (explaining that "[a]n award of compensatory damages for non-pecuniary losses should reflect the extent to which the agency directly or proximately caused the harm and the extent to which other factors also caused the harm, in addition to reflecting the nature and severity of the harm and its duration or expected duration"). Therefore, substantial evidence supports the MSPB's compensatory damages award.

While Mr. Hickey asserts that he is entitled to a higher compensatory damages award because the current award of $10,000 is inconsistent "with amounts awarded in similar cases with similar evidentiary proffers," Pet'r's Br. 39, the MSPB properly evaluated his claim based on similar cases involving limited emotional and reputational harm and applied those cases to the three instances of misconduct that the MSPB based its IRA determination on, *see* J.A. 41. The MSPB supported its $10,000 award based on similar MSPB cases and tied the award to the unlawful actions taken. *See* J.A. 43–44 (comparing the award in this case to awards in similar retaliation cases). Because Mr. Hickey submitted evidence of mental anguish and emotional distress unrelated to the retaliatory action for which he was entitled to recover, the MSPB properly held he was not entitled to a higher award of compensatory damages. *See Carey*, 435 U.S. at 264; *see also EEOC v. AutoZone, Inc.*, 707 F.3d 824, 834 (7th Cir. 2013) (finding, by a sibling circuit, compensatory damages in the amount of $10,000 not excessive, where they were "rationally connected" to pain faced in relation to a back injury).

## IV. Consequential Damages

### A. Legal Standard

If the [MSPB] orders corrective action . . . such corrective action may include," inter alia, "reasonable and foreseeable consequential damages." 5 U.S.C. § 1221(g)(1)(A), (g)(1)(A)(ii). We have explained that "the term

'consequential damages' [under § 1221(g) of the WPA[7]] is limited to reimbursement of out-of-pocket costs and does not include non-pecuniary damages." *Bohac*, 239 F.3d at 1343. This is because "Congress intended a narrow construction of 'consequential damages.'" *Id.* at 1342.

## B. Substantial Evidence Supports the MSPB's Determination that Mr. Hickey Is Not Entitled to Consequential Damages

The MSPB determined that Mr. Hickey "did not prove that he incurred actual monetary losses or out of pocket costs" and is, therefore, "not entitled to consequential damages." J.A. 37, 38. Mr. Hickey asserts that he is entitled to consequential damages because it "is undisputed that for nineteen months [DHS] forced Mr. Hickey to remain in travel status for more than twelve hours per day." Pet'r's Br. 28. We agree with the MSPB.

Substantial evidence supports the MSPB's decision that Mr. Hickey is not entitled to consequential damages. To recover consequential damages, Mr. Hickey was required to provide evidence of his out-of-pocket expenses or monetary losses that resulted from his sixty-three-mile

---

[7] In *Bohac*, we discussed the WPEA's predecessor, the WPA. *See* 239 F.3d at 1334. We explained that while the "WPA does not in fact provide for recovery of consequential 'damages,'" but rather "consequential *changes*," "the reference to 'changes' is obviously a mistake." *Id.* at 1338 (emphasis added). "It is well-established that an appellate court may interpret statutes to correct such obvious mistakes" and we did so to allow recovery of consequential damages at that time. *Id.*; *see U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 462 (1993) (disregarding a scrivener's error on punctuation because it was against the "overwhelming evidence from the structure, language, and subject matter of the . . . Act").

commute. *See Bohac*, 239 F.3d at 1343 (explaining that consequential damages are limited to "reimbursement of out-of-pocket costs" and limiting consequential damages under the WPA to out-of-pocket expenses"). Because Mr. Hickey did not present *any* evidence, such as gas or credit card receipts, to demonstrate his actual monetary losses or out-of-pocket expenses, Mr. Hickey has failed to demonstrate error in the MSPB's decision. *See id.* at 1339. We, therefore, conclude that the MSPB's consequential damages determination is supported by substantial evidence.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. Although we affirm the determinations on compensatory and consequential damages, we vacate the attorney fees determination of the Merit Systems Protection Board and remand for further proceedings consistent with this opinion. Accordingly, the Final Decision of the Merit Systems Protection Board is

## AFFIRMED IN PART, VACATED IN PART, AND REMANDED

### COSTS

No costs.