# United States Court of Appeals for the Federal Circuit

---

**HITKANSUT LLC, ACCELEDYNE TECHNOLOGIES, LTD, LLC,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2019-1884

---

Appeal from the United States Court of Federal Claims in No. 1:12-cv-00303-CFL, Senior Judge Charles F. Lettow.

---

Decided: May 1, 2020

---

JOHN S. ARTZ, Dickinson Wright PLLC, Ann Arbor, MI, argued for plaintiffs-appellees. Also represented by ROBERT AVERS; FRANK MICHAEL SMITH, Troy, MI.

GARY LEE HAUSKEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by JOSEPH H. HUNT.

---

Before PROST, *Chief Judge*, CLEVENGER and MOORE, *Circuit Judges*.

PROST, *Chief Judge*.

The United States appeals from a decision of the United States Court of Federal Claims ("Claims Court") awarding attorneys' fees and costs to Hitkansut LLC and Acceledyne Technologies, Ltd., LLC (collectively, "Hitkansut") under 28 U.S.C. § 1498(a). Section 1498(a) provides for the award of attorneys' fees when certain conditions are met, unless "the court finds that the position of the United States was substantially justified." We agree with the United States that "the position of the United States" as used in this statutory provision refers to positions taken by the United States during litigation and does not encompass pre-litigation conduct by government actors. The Claims Court erred to the extent it interpreted "the position of the United States" to include pre-litigation conduct. However, because the examples of conduct cited by the Claims Court demonstrate that the position of the United States was not substantially justified even under this narrower definition, we affirm the award of fees.

I

Hitkansut owns United States Patent No. 7,175,722 ("the '722 patent"), entitled "Methods and Apparatus for Stress Relief Using Multiple Energy Sources." While the application that later issued as the '722 patent was pending, Hitkansut entered into a non-disclosure agreement with Oak Ridge National Laboratory ("ORNL") and provided ORNL with a copy of the then-unpublished patent application. As the Claims Court found, ORNL staff "prepared various research reports, received funding, authored multiple publications, and received awards" for research "which was based upon unauthorized use of the '722 patent." *Hitkansut LLC v. United States*, 142 Fed. Cl. 341, 346 (2019) ("*Fees Decision*").

Following the issuance of the '722 patent, Hitkansut brought suit alleging infringement by the United States (acting through ORNL) pursuant to 28 U.S.C. § 1498. *Id.*

The Claims Court determined that certain claims of the '722 patent were invalid but that claims 1, 6, and 11 of the '722 patent were valid and infringed. *Hitkansut LLC v. United States*, 130 Fed. Cl. 353, 367, 395 (2017) ("*Merits Decision*"). Although Hitkansut originally sought a royalty between $4.5 million and $5.6 million, based on a percentage of the relevant research funding obtained by ORNL, the Claims Court rejected this damages theory and instead awarded $200,000, plus interest, as the hypothetically negotiated cost of an up-front licensing fee for the '722 patent. *Id.* at 392–94. Reserving the issue of attorneys' fees, the Claims Court entered judgment on the merits pursuant to Court of Federal Claims Rule 54(b), which this court affirmed. *Hitkansut LLC v. United States*, 721 F. App'x 992 (Fed. Cir. 2018).

Following our affirmance of the merits, Hitkansut moved for an award of attorneys' fees and expenses pursuant to 28 U.S.C. § 1498(a), which the Claims Court granted-in-part in the amount of $4,387,889.54. *Fees Decision* at 368. The United States timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

II

On appeal, the United States makes three challenges to the award of attorneys' fees. First, it argues that the Claims Court erred in statutory interpretation by determining that "the position of the United States"—which must be substantially justified under 28 U.S.C. § 1498(a)—includes not only the government's litigation positions but also its pre-litigation conduct. Second, it argues that, regardless of statutory interpretation, the position of the United States in this case was substantially justified. Third, it argues that because Hitkansut's damages award was lower than the maximum damages figure it initially sought, the Claims Court erred by not proportionally reducing its attorneys' fees award. We address each argument in turn.

We review the Claims Court's statutory interpretation de novo. *Quaker State Oil Refining Corp. v. United States*, 994 F.2d 824, 827 (Fed. Cir. 1993). We review the Claims Court's determination of whether the government's position was substantially justified, as well as its determination of the proper amount of attorneys' fees, for an abuse of discretion. *See Pierce v. Underwood*, 487 U.S. 552, 559 (1988); *Biery v. United States.*, 818 F.3d 704, 710 (Fed. Cir. 2016).

A

Title 28, Section 1498 of the United States Code provides that when the United States uses a patented invention "without license . . . or lawful right," the patent owner may bring suit to recover "his reasonable and entire compensation for such use." 28 U.S.C. § 1498(a). The statute includes a fee-shifting provision, which states that when the patent owner is "an independent inventor, a nonprofit organization, or an entity that ha[s] no more than 500 employees," reasonable and entire compensation shall include "reasonable fees for expert witnesses and attorneys."[1] *Id.* This fee-shifting provision does not apply, however, "if the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.*

The Claims Court, at Hitkansut's urging, concluded that "the position of the United States" as used in § 1498(a) includes "both the position taken by the United States in the civil action and the action or failure to act by the agency upon which the civil action is based." *Fees Decision* at 357 (internal quotation marks omitted). We agree with the United States, however, that this is overbroad. As explained below, the "position of the United States" for the

---

[1]    There is no dispute in this case that Hitkansut is an entity with fewer than 500 employees.

purposes of § 1498(a) refers only to the positions taken by the United States in litigation and not to its prior actions or failures to act.

1

Although we have never before interpreted this clause of § 1498(a), we have had prior occasion to interpret the phrase "the position of the United States." The Equal Access to Justice Act ("EAJA") similarly provides attorneys' fees in certain circumstances "unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). Like § 1498(a) today, EAJA originally did not define "the position of the United States." *See Broad Ave. Laundry & Tailoring v. United States*, 693 F.2d 1387, 1390 (Fed. Cir. 1982).

Tasked with interpreting "the position of the United States" in EAJA, we concluded that "[a] fair and reasonable reading of those words is that the position referred to is that taken by the United States in the civil action in which the attorney's fees were incurred." *Id.* (internal quotation marks omitted). In other words, the position of the United States referred only to its litigation positions:

> It would strain the normal meaning of language to construe the statutory words to cover the position the United States took in the administrative proceedings that led to the civil action in which the attorney's fees were incurred. The petitioner here seeks attorney's fees and expenses only for services rendered in the proceedings before the Court of Claims, and it would be inappropriate to look at the position the United States took in other forums to determine whether to award fees for those services.

*Id.* The Second, Fourth, and Tenth Circuits reached the same conclusion. *See Boudin v. Thomas*, 732 F.2d 1107, 1115–16 (2d Cir. 1984) ("[W]e look only to the government's position in the litigation . . . to determine whether

its actions were 'substantially justified.'"); *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1487 (10th Cir. 1984) ("[T]he position of the United States, for purposes of this Act, means the arguments relied upon by the government in litigation."); *Tyler Bus. Servs., Inc. v. NLRB*, 695 F.2d 73, 75–76 (4th Cir. 1982) ("We believe 'position' should be read to mean the government's position as a party in prosecuting or defending the litigation."). In 1985, however, Congress amended EAJA to include a broader express definition of the term:

> "position of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based.

28 U.S.C. § 2412(d)(2)(D); Pub. L. 99–80, 99 Stat. 183 (1985).

Eleven years after amending EAJA, Congress amended § 1498(a) to include the fee-shifting provision at issue here. Pub. L. 104–308, 110 Stat. 3814 (1996). While Congress elected to use the same "position of the United States" language from EAJA, it did not incorporate the later-added express definition of the term.

2

Statutory interpretation begins with the ordinary meaning of the language chosen by Congress. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 101 (2011). "[W]here Congress uses a common-law term in a statute, we assume the term comes with a common law meaning, absent anything pointing another way." *Id.* (internal quotation marks omitted). In evaluating the language of § 1498(a) we conclude today, as we did in *Broad Avenue Laundry*, that the ordinary meaning of "the position of the United States" refers to the litigation positions taken by the United States in the civil action in which the attorneys' fees were incurred

and not any underlying government action or inaction. *See Broad Ave. Laundry*, 693 F.2d at 1390.

Hitkansut argues, and the Claims Court concluded, that the existence of a broad express definition of the term in EAJA provides a reason to ignore the ordinary meaning of the language of § 1498(a). *Fees Decision* at 357–58; Appellees' Br. 9–10. We do not agree. If anything, the opposite is true. "We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010). We therefore assume that when Congress added the phrase "the position of the United States" to § 1498(a), it was aware that a majority of circuit courts to consider the issue had concluded that the ordinary meaning of that phrase referred only to litigation positions. With that knowledge, Congress nonetheless crafted § 1498(a) to refer to the "positions of the United States" and elected not to provide an express definition of the term. That decision cannot reasonably be read as evidence of Congressional intent for § 1498(a) to mirror EAJA.

Nor does anything in the legislative history indicate such an intent. It is true, as the Claims Court pointed out, that during the legislative process the Department of Justice expressed the view that § 1498(a) should match EAJA for the purposes of "recovery of costs and attorneys' fees." *See* H.R. Rep. No. 104-373, at 7, 1996 U.S.C.C.A.N. 4173, 4179. But the Department's views were not expressly related to the definition of "the position of the United States" and, notably, Congress declined to adopt many of the Department's suggestions. For example, the Department also suggested that § 1498(a) include "limits on the net worth of individuals" who are eligible for attorneys' fees. *Id.* While that limitation is present in EAJA, 28 U.S.C. § 2412(d)(2)(B), Congress declined to include it in § 1498(a). This undermines any suggestion that Congress intended to fully adopt the Department's recommendations. The decision not to include a definition of "the

position of the United States," in spite of the Department's recommendation, is further evidence that Congress intended the common-law definition of the term, not EAJA's express definition.

Accordingly, we hold that "the position of the United States" as used in § 1498(a) refers to the litigation positions taken by the United States in the civil action in which the attorneys' fees were incurred.

Hitkansut argues that this statutory interpretation cannot be correct because it would "preclude a trial court from considering whether the [g]overnment's position during the litigation is supportable based on the unique facts and context underlying the litigation." *See* Appellees' Br. 21. That concern is misguided. We hold today that "the position of the United States" refers only to its litigation positions. But nothing in our holding prevents the Claims Court from looking to the facts of an individual case, including facts that occurred pre-litigation, when deciding whether those litigation positions were substantially justified.

As the Supreme Court has explained, the "substantially justified" test asks whether a position is "justified in substance or in the main—that is, justified to a degree that would satisfy a reasonable person." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158 n.6 (1990) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565–566 (1988)). That requires the position to have a "reasonable basis both in law *and fact*." *Id.* (emphasis added). The Claims Court explained this point well:

> As a practical matter, the court cannot determine whether the government's position during litigation was justified without examining the underlying facts relating to the government's conduct. A reasonable basis requires more than conceptual arguments germane to the subject matter; arguments must also hue to the facts. That a litigation position may be reasonable in the abstract, i.e., has a

reasonable basis in law, does not mean that the lit-
igation position as applied to a specific case re-
mains      reasonable      when      contradicted      or
unsupported by the factual record.

*Fees Decision* at 357.  We agree with the Claims Court that,
although "the position of the United States" refers to liti-
gation positions, those positions "lack[] substantial justifi-
cation" when they are "unsupported by the facts."  *Id.* at
359.

## B

Applying our interpretation of § 1498(a), we determine
that although the Claims Court relied on an overbroad def-
inition of "the positions of the United States," its analysis
demonstrates that the position of the United States was
not substantially justified even under a correct definition
of that term.  Therefore, we conclude that the Claims Court
did not abuse its discretion in awarding attorneys' fees.

The "position of the United States" in this case includes
its invalidity and non-infringement positions, as well as its
discovery responses and other positions expressed during
litigation.  It does not include the act of infringement itself,
the purported breach of contract, or any other underlying
governmental actions.  To the extent the Claims Court con-
cluded that ORNL "breach[ing] the [non-disclosure] agree-
ment and infring[ing] the invention" were positions of the
United States that needed to be substantially justified,
*Fees Decision* at 358, that was error, and we do not rely on
these statements.

Relying solely on the Claims Court's statements re-
garding litigation positions, however, the record before us
nonetheless reflects that the position of the United States
was not substantially justified.  As the Claims Court found,
the United States maintained non-infringement positions
that were factually inconsistent with the actions ORNL
took after having learned of the '722 patent.  *Id.* at 359.  For

example, ORNL provided interrogatory responses that were contrary to both documentary evidence and the deposition testimony of its employees. *Id.* at 359. Its obviousness arguments "failed to address an essential element of each of the three asserted claims or to demonstrate any motivation to combine the prior art." *Id.* (internal quotation marks omitted). And its enablement argument was contradicted by its own expert witness, who conceded that "a person of ordinary skill in the art could account for the errors in the patent without undue experimentation and perform all necessary calculations within approximately one hour." *Id.* In light of these findings, each of which relates to the positions of the United States under a correct interpretation of that term, the Claims Court did not abuse its discretion in concluding that the government's position was not substantially justified.

## C

Separately from its statutory interpretation argument, the United States argues that the Claims Court erred by failing to further reduce the attorneys' fees awarded to Hitkansut. It contends that because Hitkansut originally sought $5.6 million in damages, but was awarded only $200,000, Hitkansut achieved only "limited success" in its lawsuit, and the Claims Court erred by declining to reduce its fee award accordingly. Appellant's Br. 37–38. We disagree. The Claims Court has "broad discretion" to determine the amount of a fee award. *See Biery*, 818 F.3d at 714 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). None of the cases cited by the government require the Claims Court to reduce a fee award where the plaintiff succeeded on its sole claim and recovered the maximum amount of damages allowable by law.

The United States cites *Hensley* and *Farrar v. Hobby*, 506 U.S. 103, 114 (1992), for the proposition that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained," and therefore "fee

awards must be scaled to approximate the results obtained." Appellant's Br. 38 (citations omitted). Neither *Hensley* nor *Farrar*, however, mandates a reduction in fees in this case.

*Hensley* concerns reduction of awards where "a plaintiff has achieved only partial or limited success" due to prevailing on less than all of its causes of action. 461 U.S. at 436, 440. In such a case, "the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. In this case, however, Hitkansut brought exactly one claim—infringement of the '722 patent—and prevailed on it. The fact that it obtained less monetary relief than it may have hoped does not mean that it obtained "limited success" as the term is used in *Hensley*.

The United States' reliance on *Farrar* is similarly founded on a quotation taken out of context. *Farrar* states that "where recovery of private damages is the purpose of . . . litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." 506 U.S. at 114–15. That statement, however, referred to a plaintiff who obtained only nominal damages. As the Supreme Court explained, "[a] plaintiff who seeks compensatory damages but receives no more than nominal damages" often "should receive no attorney's fees at all." *Id.* at 115. This was true in *Farrar* because "[i]n a civil rights suit for damages . . . the awarding of nominal damages also highlights *the plaintiff's failure to prove actual, compensable injury*." *Id.* (emphasis added). Because damages awarded under 42 U.S.C. § 1983, the statute at issue in *Farrar*, "must always be designed to compensate injuries," the Court held that a plaintiff who has not proven compensable injuries may not be entitled to attorneys' fees. *Id.*

Unlike the plaintiff in *Farrar*, Hitkansut did not "fail[] to prove actual, compensable injury." At trial, it proved compensable injury based on expert testimony from both

parties that the United States would have paid $200,000 for a one-time license to the '722 patent in a hypothetical negotiation. *Merits Decision* at 391–92. This was not a "technical, insignificant victory." *Farrar*, 506 U.S. at 113 (internal quotation marks omitted). Therefore, the portion of *Farrar* relied upon by the United States, which is based on a plaintiff's failure to prove actual injury, is inapplicable.

Accordingly, because Hitkansut succeeded on its sole claim, and proved a material amount of actual, compensable damages, the Claims Court did not abuse its discretion by declining to further reduce its award of attorneys' fees.

## III

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we conclude that "the position of the United States" as used in § 1498(a) refers to the litigation positions taken by the United States in the civil action in which the attorneys' fees were incurred. We also conclude that the Claims Court did not abuse its discretion in finding that the position of the United States was not substantially justified in this case and did not abuse its discretion by declining to further reduce its award of attorneys' fees. Accordingly, the Claims Court's award of attorneys' fees is affirmed.

### AFFIRMED

COSTS

The parties shall bear their own costs.