# United States Court of Appeals for the Federal Circuit

---

**FASTSHIP, LLC,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2019-2360

---

Appeal from the United States Court of Federal Claims in No. 1:12-cv-00484-CFL, Senior Judge Charles F. Lettow.

---

Decided: August 3, 2020

---

MARK LEE HOGGE, Dentons US LLP, Washington, DC, argued for plaintiff-appellee. Also represented by RAJESH CHARLES NORONHA; DONALD EDWARD STOUT, Fitch, Even, Tabin & Flannery LLC, Washington, DC.

SCOTT DAVID BOLDEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by ETHAN P. DAVIS, GARY LEE HAUSKEN; ANDREW PAUL ZAGER, United States Navy, Arlington, VA.

---

Before DYK, WALLACH, and CHEN, *Circuit Judges.*

DYK, *Circuit Judge*.

The United States appeals an order of the Court of Federal Claims ("Claims Court") granting a request by Fast-Ship, LLC ("FastShip") for attorney's fees and expenses. Because the Claims Court erred in considering the government's pre-litigation conduct and in one respect erred in its analysis of the government's litigation conduct, we vacate and remand.

## BACKGROUND

FastShip is the assignee of two patents, United States Patent Nos. 5,080,032 ("the '032 patent") and 5,231,946 ("the '946 patent"). The patented ship designs "allow a large ship to travel at high speeds, despite difficult weather and sea conditions," J.A. 2, by "increas[ing] efficiency of the hull," J.A. 126.

In the early 2000s, the Navy began a program to design and build littoral combat ships ("LCS") that would achieve high speeds. Littoral combat ships "are highly maneuverable vessels designed for operations both in ocean waters and near shore." J.A. 1 n.1. The Navy issued a request for proposals in 2003. During the initial phase of the LCS procurement, FastShip met with and discussed a potential hull design with two government contractors subject to non-disclosure and confidentiality agreements, apparently with the goal of becoming part of the design team. Ultimately, however, FastShip was not awarded a contract or a sub-contract.

In 2008, FastShip filed an administrative claim with the Navy "contending that the LCS program [specifically, the LCS-1 and LCS-3 ships] infringed upon [its] patents." J.A. 3. When the claim was denied by the Navy, FastShip filed a complaint with the Claims Court on August 2, 2012, seeking reasonable royalty damages for infringement pursuant to 28 U.S.C. § 1498(a). The government denied infringement and argued that the patent was invalid as

obvious. After a 10-day trial, the Claims Court "found that the claims from the '032 and '946 patents were valid and directly infringed by the government in its construction of the LCS-1 [ship]." J.A. 3. The Claims Court also found that the accused LCS-3 ship was not "manufactured" by or for the government within the meaning of § 1498 before the patents in suit expired. We affirmed that decision in *Fast-Ship, LLC v. United States*, 892 F.3d 1298 (Fed. Cir. 2018) (*FastShip I*).

Subsequently, FastShip filed a motion for attorney's fees and expenses pursuant to 28 U.S.C. § 1498(a). The statute provides for a fee award to smaller entities that have prevailed on infringement claims, unless the government can show that its position was "substantially justified." 28 U.S.C. § 1498(a). The government opposed a fee award on the ground that its positions were substantially justified. After a hearing, the Claims Court awarded fees, finding that the government's pre-litigation conduct and positions taken during litigation were not "as a whole" substantially justified "though it may have taken reasonable stances in some respects." J.A. 18. As to the pre-litigation conduct, the Claims Court found it unreasonable for a government contractor to gather information from FastShip about designing an LCS but not to include it as part of the team that was awarded the contract. The Claims Court also concluded that the Navy took an exceedingly long time to act on FastShip's administrative claim and did not provide sufficient analysis in denying the claim. As to the litigation conduct, the Claims Court found the government's litigation positions unreasonable, including its arguments with respect to one document (Figure 11 of the patent specifications), and its reliance on the testimony of its expert, Mr. Blount, to prove obviousness despite his "extraordinary skill." J.A. 17. The Claims Court awarded FastShip $6,178,288.29 in attorney's fees and related expenses. The government appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### I

We review the Claims Court's statutory interpretation de novo. *Quaker State Oil Refining Corp. v. United States*, 994 F.2d 824, 826–27 (Fed. Cir. 1993). We review the Claims Court's determination of whether the government's position was substantially justified for abuse of discretion. *See Pierce v. Underwood*, 487 U.S. 552, 558–59 (1988); *Hitkansut LLC v. United States*, 958 F.3d 1162, 1166 (Fed. Cir. 2020).

Title 28, Section 1498 of the United States Code provides that when the United States uses or manufactures a patented invention "without license . . . or lawful right," the patent owner may bring suit to recover "reasonable and entire compensation for such use." 28 U.S.C. § 1498(a). The statute states that when the patent owner prevails and is "an independent inventor, a nonprofit organization, or an entity that ha[s] no more than 500 employees," the government is liable to pay "reasonable and entire compensation," that shall include "reasonable fees for expert witnesses and attorneys." *Id.* No award shall be made, however, "if the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.* The burden is on the government to establish that a position is substantially justified. *See Doty v. United States*, 71 F.3d 384, 385 (Fed. Cir. 1995) (providing that, in an Equal Access to Justice Act case, "[w]hen a party has prevailed in litigation against the government, the government bears the burden of establishing that its position was substantially justified").

### II

The government first argues that the Claims Court erred in relying on the government's pre-litigation conduct. We agree.

The Claims Court considered "all of the government's conduct . . . when determining whether the position of the United States was 'substantially justified.'" J.A. 15. Specifically, the Claims Court focused on two pre-litigation events: (1) FastShip "not [being] included as a part of the team that eventually won and constructed the [infringing] LCS-1" despite its meeting with government contractors, "where information related to FastShip's patents was shared and a confidentiality agreement was signed"; and (2) the Navy "s[i]t[ting] on [FastShip's administrative] claim for . . . two years" and not including any analysis in its "short, two-page denial" of the claim. J.A. 16.

Reliance on this pre-litigation conduct in the fee analysis was error. We recently held in *Hitkansut LLC v. United States*, 958 F.3d 1162 (Fed. Cir. 2020), that "'the position of the United States' as used in [28 U.S.C. § 1498(a)] refers to positions taken by the United States during litigation and does not encompass pre-litigation conduct by government actors." *Id.* at 1165. Under *Hitkansut*, the conduct to be considered "does not include the act of infringement itself, [any] purported breach of contract, or any other underlying governmental actions." *Id.* at 1169. Thus, it was error for the Claims Court to consider the government's actions during the procurement process and during the administrative proceeding, and the award of fees on that basis was an abuse of discretion. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . ." (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990))); *Waymark Corp. v. Porta Sys. Corp.*, 334 F.3d 1358, 1363 (Fed. Cir. 2003) ("[A] district court must be careful not to award sanctions based on a misunderstanding of the governing law, and we must carefully review an award of sanctions to ensure that this has not occurred.").

Because the Claims Court erroneously based its decision in large part on pre-litigation conduct and did not conclude that the litigation conduct itself was sufficient for an award of fees, a remand is required. *See Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1340, 1342 (Fed. Cir. 2017) (remanding to the district court to "evaluate whether an award of fees is appropriate" "based on a correct analysis" where it "erred in declining to consider, in connection with its totality of circumstances analysis, [a party]'s earlier litigation misconduct"). This is not a case like *Hitkansut*, where the Claims Court's "analysis demonstrate[d] that the position of the United States was not substantially justified even under a correct definition of th[is] term." 958 F.3d at 1169.

On remand, the Claims Court must consider whether the government's litigation conduct alone, to the extent it was not substantially justified, was sufficient to justify a fee award.

## III

One further matter remains to be decided on this appeal. The government argues that, in considering the government's litigation conduct, the Claims Court also erred in two respects. First, in arguing that the government did not infringe, the government presented evidence that the accused LCS-1 did not "increase[] efficiency of the hull" as required by the claims. J.A. 10027–28. It argued that this claim limitation should be construed in view of Figure 11 of the patent specification that was common to both patents. Figure 11 plots the horsepower required by a patented ship to reach a certain speed, as compared to a conventional frigate. The figure shows that the ship of the invention is more efficient (i.e., requires less power) to attain a given speed than a conventional ship. The parties differed as to whether Figure 11 used imperial or metric units, a difference that would affect the calculated efficiency of the accused ships. In the merits appeal, we

concluded that the "Court of Federal Claims . . . did not clearly err as a factual matter by reading Figure 11 as using metric units." *FastShip I*, 892 F.3d at 1309.

The government argues that its use of imperial units for horsepower in Figure 11 to show non-infringement was reasonable. In its pre-trial contentions of law and fact, the government presented an annotated version of Figure 11, which plotted data for the accused ship, LCS-1, in imperial units, alongside the data from the invention and the conventional ship. "However, the [g]overnment did not support its arguments regarding the units in Figure 11 with any evidence." *FastShip I*, 892 F.3d at 1309. The specification does not state that Figure 11 uses imperial units.

At trial, the inventor of the patents at issue testified that Figure 11 depicts "shaft horsepower in kilowatts" (metric units), J.A. 7053, and the government failed to rebut this testimony. The government nevertheless reproduced the annotated Figure 11 with imperial units in its post-trial brief. In reply, FastShip explained that the government erroneously plotted LCS-1's shaft horsepower in imperial units although Figure 11 is in metric units.

The Claims Court found that "the government's expert used the wrong units in his analysis," ignored the error when it "was pointed out to them by [the inventor] on the first day of trial," and "was essentially arguing that the [LCS-1] design it chose for its efficiency [during procurement], was, in fact, not efficient." J.A. 17 & 17 n.12. We see no clear error in the Claims Court's factual findings here or its conclusion that the government's position here was not substantially justified.

Second, the government argues that the Claims Court erred in finding that reliance on its expert, Mr. Blount, and his "feasibility analysis" was not substantially justified. The government presented Mr. Blount's "feasibility analysis" as evidence that the asserted claims would have been obvious to a person of ordinary skill in the art. The Claims

Court concluded that "Mr. Blount had 'extraordinary skill'" and that it was "unreasonable" to "proffer him as a person of ordinary skill in the art" because of "his decades of experience." J.A. 17. The government argues, and we agree, that this was error. An "attack [on an expert] on the grounds that he is not 'a person of ordinary skill in the art'" "is meritless." *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997). "The actual [expert]'s skill is irrelevant to the inquiry . . . ." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985). It was not unreasonable for the government to proffer Mr. Blount's "feasibility analysis."[1] Our decision with this respect also requires a remand for further consideration by the Claims Court.[2]

---

[1]    To the extent the Claims Court's substantially justified finding relied on the fact that the "feasibility analysis" involved "a yacht not comparable to a larger ship," J.A. 17, the record does not support the conclusion that such a comparison was not justified. The government had presented expert testimony as to why the yacht is comparable, and comparability was not a factor in the Claims Court's original rejection of the "feasibility analysis" in the post-trial opinion.

[2]    We have no occasion now to address the question of whether the amount of fees should be adjusted when the positions of the government are in part substantially justified and in part not substantially justified. *Compare Intellectual Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1384 (Fed. Cir. 2019) (determining, in the context of 35 U.S.C. § 285, that "a court must award fees in an amount that 'bear[s] some relation to the extent of the misconduct'" (quoting *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1278 (Fed. Cir. 2018))).

FASTSHIP, LLC v. UNITED STATES                                    9

## CONCLUSION

We vacate the fee award and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

## COSTS

No costs.