# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 14, 2015

Lyle W. Cayce
Clerk

————

No. 13-20356

————

WASTE MANAGEMENT OF WASHINGTON, INCORPORATED,

      Plaintiff–Appellee,

v.

DEAN KATTLER, ET AL.,

      Defendants,

MICHAEL A. MOORE,

      Appellant.

————————

Appeal from the United States District Court
for the Southern District of Texas

————————

Before JOLLY, HIGGINBOTHAM, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge.

This appeal arises from a contempt proceeding ancillary to the merits of the underlying case. Michael A. Moore, the attorney for Dean Kattler, the defendant in the proceedings below, appeals the imposition of sanctions following a finding that Moore was in civil contempt. Moore contends that he was not afforded procedural due process and that the district court abused its discretion by finding him in contempt. We vacate the contempt finding and sanctions.

No. 13-20356

## I

In the underlying litigation, Waste Management, Inc. (WM) sued Kattler, a former employee, for misappropriating confidential business information, and for violating the terms of his employment agreement by accepting a job with Emerald Services, Inc. (Emerald), an alleged WM competitor.

Shortly after the onset of litigation, WM sought a temporary restraining order (TRO) to enjoin Kattler from disclosing WM's confidential information, and requiring Kattler to produce images of all electronic devices that might contain such information. On December 12, 2012, the district court issued a TRO directing Kattler to "produce to Waste Management images of all electronic devices used by Kattler . . . except for the electronic devices *used and/or owned by Kattler at Emerald*," and to "produce to a third-party forensics expert, to be agreed upon by the Parties, images of all electronic devices *used by Kattler . . . at Emerald.*" Eight days later, the district court issued a preliminary injunction that modified the TRO by requiring Kattler to produce all personal devices to WM within two days (by December 22), and expanded the definition of "personal devices" to include all of Kattler's devices, except those devices "*provided to Mr. Kattler by Emerald.*" This enlargement occurred despite the fact that the parties had discussed with the court the importance of preventing the disclosure of attorney-client-privileged information present on devices that were now to be produced directly to WM.

Because the order failed to address the attorney-client-privilege concerns, Moore argued that Kattler should not be compelled to produce certain devices. Moore also disputed, based on Kattler's representations, the existence of a certain SanDisk-brand USB thumb drive sought by WM. After it became clear Kattler would not produce those devices, WM moved for a show-cause hearing as to why Kattler should not be held in contempt. The district

2

court granted this motion and ordered "that Defendant appear for a hearing" to be held on January 22, 2013.

At the hearing, one of the issues was whether Kattler was required to produce his iPad for inspection. Moore argued that Kattler complied with the court's orders despite not producing the iPad because it was a personal device and because it contained information protected by the attorney-client privilege. The district court disagreed that the iPad could be considered "personal" under the preliminary injunction, and ordered that the device be produced to WM. Notably, the court spoke in terms of the device itself, rather than an image of its content. The court recognized Moore's valid privilege concerns and stated Kattler would not waive the privilege by producing the iPad, but indicated Kattler still had to produce it. Moore also represented to the court that Kattler could not produce the SanDisk thumb drive WM was requesting because Kattler had never owned such a drive. The court declined to hold Kattler in contempt but did issue an order requiring that all parties comply with his orders, "whether written or pronounced from the Bench."

Following the hearing, Kattler informed Moore that he now recalled owning at least one SanDisk thumb drive. Moore consulted a professional responsibility expert and, on January 28, informed Kattler he would no longer serve as counsel.

Kattler, now represented by new counsel, produced the image of the iPad to WM, but the image contained no relevant information. The responsive documents were stored in a restricted portion of the iPad's memory that was not included in the image because that portion of the memory was technologically inaccessible at the time the device was imaged. WM demanded Kattler produce the iPad itself so that recently-developed "jailbreaking" software could be used to access the device's restricted memory. After Kattler refused to do so on grounds that the restricted memory contained privileged

No. 13-20356

information, WM filed a renewed motion for Kattler to show cause as to why he should not be found in contempt for refusing to produce the iPad itself.  The district court granted this motion and issued a notice of setting providing that a hearing would take place on March 4.  The notice stated only that a hearing was to be held to address docket entry "#84," which was WM's show-cause motion.  This motion listed Kattler as the sole potential contemnor whose liability was to be addressed at the hearing.

Following this hearing, the district court found both Kattler and Moore in contempt on grounds that they: (1) misled the court as to the existence of a SanDisk-brand USB thumb drive, (2) failed to produce an image of Kattler's iPad, and (3) failed to produce the iPad device itself.  Moore contends on appeal that, while he was aware he might be the subject of a future contempt hearing, he was not provided with adequate notice that a contempt finding could be entered against him after the show-cause hearing.  He further argues that, on the merits, he did not aid or abet any attempt to mislead the court as to the existence of the thumb drive, and that his failure to comply with the court's orders concerning the iPad is excusable because he was attempting to assert the attorney-client privilege.

## II

"We review contempt findings for abuse of discretion, but 'review is not perfunctory.'"[1]  Facts will be accepted as true unless clearly erroneous, but questions of law concerning the contempt order are reviewed de novo.[2]  A factual finding is "clearly erroneous only if, viewing the evidence in light of the record as a whole, we are left with the 'definite and firm conviction that a

---

[1] *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) (quoting *Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir. 1998)).

[2] *Id.*

No. 13-20356

mistake has been committed."[3]  Whether an alleged contemnor was afforded due process is a question of law we review de novo.[4]

### III

In general, due process requires "that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses."[5]  A "narrow exception" to these requirements exists when a litigant engages in courtroom conduct that "disturbs the court's business."[6]  Under this exception, the court may issue a sanction without notice when "all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority . . . before the public.'"[7]

Moore's allegedly contumacious conduct occurred outside the courtroom. While his conduct was discussed at the second show-cause hearing, the district court did not find him in contempt based on any disruptive behavior occurring at that particular proceeding.  Therefore, the district court's contempt finding cannot stand if Moore was not afforded adequate notice.

WM contends its pleadings provided Moore with sufficient notice he might be held in contempt at the second show-cause hearing.  It argues this court's decisions in *American Airlines, Inc. v. Allied Pilots Association*[8] and

---

[3] *In re Grand Jury Proceedings*, 55 F.3d 1012, 1013 (5th Cir. 1995) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[4] *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 583-84 (5th Cir. 2000); *Thomas, Head & Greisen Emps. Trust v. Buster*, 95 F.3d 1449, 1458 (9th Cir. 1996).

[5] *In re Oliver*, 333 U.S. 257, 275 (1948).

[6] *Id.* (quoting *Cooke v. United States*, 267 U.S. 517, 536 (1925)).

[7] *Id.*

[8] 228 F.3d 574 (5th Cir. 2000).

5

*Alizadeh v. Safeway Stores, Inc.*[9] stand for the proposition that a movant's pleadings alone put all potential contemnors on notice that their liability could be adjudicated at a show-cause hearing, not just those named in the show-cause motion. We are not persuaded. In *American Airlines*, we concluded that the defendants had sufficient notice based on the opposing party's motion for contempt, "*[c]ouple[d] with the district court's Show Cause Order,*" which individually named all parties whom the movant sought the court to hold in contempt.[10] Similarly, in *Alizadeh*, we held that the imposition of attorneys' fees against the plaintiff "could not have come as a surprise" because the defendant had repeatedly requested such fees in its pleadings, and because the court itself had issued a "Joint Pretrial Order" which provided that the parties were to litigate at the hearing the issue of whether "Safeway [was] entitled to recover reasonable attorney's fees and costs from the Plaintiff."[11]

Adequate notice typically takes the form of a show-cause order and a notice of hearing identifying each litigant who might be held in contempt.[12] But, rather than issue a show-cause order naming Moore and Kattler as alleged contemnors, the court published a notice of an evidentiary hearing to address WM's "Motion for Hearing – #84." Docket entry #84 referred to WM's request that "Defendant Dean Kattler should again be ordered to show cause as to why he is not in contempt of the Court's orders." This notice did not signal to Moore that he could be found in contempt because it identified Kattler alone

---

[9] 910 F.2d 234 (5th Cir. 1990).

[10] *American Airlines, Inc.*, 228 F.3d at 584 (emphasis added).

[11] *Alizadeh*, 910 F.2d at 236.

[12] *See, e.g.*, *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 907 (5th Cir. 1995) ("At the time sanctions were rendered against him, [the contemnor] had not been served with any document that would satisfy the requirement of formal process. . . . The district court had not issued a show cause or similar order or process that would have put [the contemnor] on notice that sanctions were being considered *against him personally*." (emphasis added)).

as the party whose contempt liability was to be adjudicated. We therefore vacate the contempt order as it pertains to Moore.

## IV

We also conclude that the district court abused its discretion by finding Moore in contempt. "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order."[13] To hold a party in civil contempt, the court must find such a violation by clear and convincing evidence.[14] Evidence is clear and convincing if it "produces in the mind of the trier of fact a firm belief . . . so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of precise facts of the case."[15] "The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order."[16] The district court found Moore in contempt on grounds that he: (1) crafted his response to the Court in a manner to lead the Court to believe that a certain SanDisk-brand USB thumb drive did not exist, (2) failed to timely produce an image of Kattler's iPad, and (3) failed to produce the iPad itself in violation of the judge's oral directive at the first show-cause hearing. We address each of these grounds.

## A

The district court held Moore in contempt for misleading it as to the existence of the SanDisk thumb drive. In its December 20, 2012 preliminary injunction, the district court ordered Kattler and Moore to produce to WM

---

[13] *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013).

[14] *Id.*

[15] *Id.* (quoting *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004)).

[16] *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000).

images of all personal electronic devices within two days. The SanDisk thumb drive was a personal electronic device, and Moore, with knowledge of the court's order, failed to produce it by December 22. Therefore, the prima facie elements of contempt were present.

But an alleged contemnor may defend against a prima facie showing of contempt by demonstrating a present inability to comply with a court order.[17]

The record reveals Kattler misled Moore as to the existence of the thumb drive and, as a consequence, Moore was unware the thumb drive existed until after the first show-cause hearing. Prior to and during the first show-cause hearing, Kattler repeatedly denied to Moore that he had used any other electronic devices to download WM documents besides a certain Western Digital hard drive and a generic (non-SanDisk) thumb drive. Neither WM nor the district court cited any record evidence to the contrary.

Instead, WM defends this ground for contempt by arguing that, even if Moore "unknowingly repeated Kattler's representations to the district court," he still had a duty to correct those statements after he determined that Kattler did in fact possess the SanDisk drive, and his continued silence at that point made him complicit in the deception. In support of this contention, WM cites *In re Rosenthal*,[18] an unpublished district court decision in which a lawyer was sanctioned for failing to disclose immediately that his client had deleted relevant, subpoenaed e-mails.[19] But this court reversed *Rosenthal* in *Ibarra v. Baker* because the lawyer, upon discovering that his client had deleted the responsive e-mails, took immediate steps to recover the lost information and

---

[17] *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)).

[18] No. H-04-186, 2008 WL 983702 (S.D. Tex. Mar. 28, 2008), *aff'd in part and vacated in part sub nom. Ibarra v. Baker*, 338 F. App'x 457, 472 (5th Cir. 2009)).

[19] *Id.* at *10-11.

No. 13-20356

informed opposing counsel of the conduct after the extended Thanksgiving weekend.[20]  Here, Moore contacted a professional responsibility expert the day he learned of Kattler's deception.  He took steps to withdraw from representing Kattler within three days.  Within a week, Kattler had declared, in a sworn statement, that he now remembered owning at least one SanDisk thumb-drive device.   Although this case differs from *Ibarra* because Moore played a somewhat less proactive role in alerting the court to the deceptive conduct, he did take immediate steps to distance himself from Kattler, and the court and opposing counsel did learn of Kattler's refreshed recollection within one week.  Accordingly, we conclude that here, as in *Ibarra,* Moore's conduct "did not amount to assisting a fraudulent act."[21]

Viewing the record as a whole, there is abundant evidence that Kattler deceived Moore as to the existence of the SanDisk thumb drive until late January and no evidence that Moore knew of its existence until that time.  We therefore conclude that the district court's finding that Moore participated in an attempt to mislead the court as to the existence of the SanDisk thumb drive is clearly erroneous.  Accordingly, the district court abused its discretion by finding Moore in contempt on this ground.

**B**

The district court also held Moore in contempt for violating its order to produce directly to WM an image of Kattler's iPad.  In *Maness v. Meyers,*[22] the Supreme Court "recognized that '[w]hen a court during trial orders a witness to reveal information . . . [c]ompliance could cause irreparable injury because appellate courts cannot always "unring the bell" once the information has been

---

[20] *Ibarra,* 338 F. App'x at 471.

[21] *Ibarra,* 338 F. App'x at 471.

[22] 419 U.S. 449 (1975).

released.'"[23]   Accordingly, "a person to whom such an order is directed may resist the order, and yet not be guilty of contempt if the order is declared invalid on appeal."[24]   We have explicitly held that the *Maness* rule applies to an order that requires an attorney to violate the attorney-client privilege: "We hold the rule applicable to orders requiring the surrender of other rights or privileges, such as the attorney-client privilege and the attorney-work-product doctrine, where disclosure would cause irreparable injury and the rationale of *Maness*, *supra*, is equally compelling."[25]   Therefore, a party's good-faith claim of attorney-client privilege can serve as a valid defense to a finding of contempt.

Here, it is clear that the iPad contained privileged information.  Indeed, at the December 18 preliminary-injunction hearing the parties and the district court agreed upon a framework for screening out such information.  Further, the privilege was not waived; Moore vigorously asserted it on behalf of Kattler at every opportunity.  To the extent Kattler himself may have shared one privileged e-mail with a third party, the privilege was only waived with respect to that particular communication.[26]  Accordingly, while Moore clearly failed to comply with the terms of the December 20 preliminary injunction by not producing the iPad image directly to WM by December 22, this failure is excusable because the order required Moore to violate the attorney-client privilege.

---

[23] *In re Grand Jury Proceedings*, 601 F.2d 162, 169 (5th Cir. 1979) (alterations in original) (quoting *Maness*, 419 U.S. at 460).

[24] *Id.*

[25] *Id.*

[26] *See Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) ("When relayed to a third party that is not rendering legal services on the client's behalf, a communication is no longer confidential, and thus it falls outside the reaches of the privilege.").

No. 13-20356

## C

Lastly, the district court found Moore in contempt because of his failure to produce the iPad itself.  However, no contempt liability may attach if a party does not violate a "definite and specific order of the court."[27]  Prior to the first show-cause hearing, the parties only discussed producing *images* of the devices, not the devices themselves.  It was not until the first show-cause hearing, when the parties were the applicability of the preliminary injunction to the iPad, that they discussed production of the device itself, rather than an image of its content.  After the district judge determined that the iPad was a personal device that should have been produced to WM by December 22, Moore stated, "if you want that device turned over directly to Waste Management, we'll do it tomorrow."  The court responded, "I think that's what the order said." The court was mistaken: the order required Kattler to produce an image of the device only, not the device itself.  Several days later, after WM determined the image did not contain the relevant information, WM moved to hold Kattler in contempt because he had failed to produce the device itself in accordance with the court's alleged order from the bench.  But Moore was under the understandable impression that the only order in place was to produce an image of the device.  Therefore, given the degree of confusion surrounding whether the district court ordered production of the physical device, we conclude that Moore did not violate a definite and specific order of the court.

Further, even if the order had been definite and specific, Moore would have been entitled to raise renewed concerns about the presence of attorney-client-privileged-documents in the restricted portion of the iPad's memory.[28] Kattler routinely used the device to communicate about litigation strategy with

---

[27] *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013).

[28] *In re Grand Jury Proceedings*, 601 F.2d 162, 169 (5th Cir. 1979).

11

No. 13-20356

his attorney.  Moore also did not waive the defense in this context: the presence of attorney-client-privileged information in the restricted portion of the iPad's memory was irrelevant until late January of 2013 when it became clear that the image of the device was insufficient.  Even if the privilege concern had been relevant prior to that time, Moore would not have had occasion to raise it because the privileged documents were technologically inaccessible until the new jailbreaking software was developed in February of 2013.  Therefore, regardless of whether the court's order was definite and specific, the district court abused its discretion by finding Moore in contempt because the order required him to violate the attorney-client privilege.

\*     \*     \*

For the foregoing reasons, we VACATE the judgment of the district court as to Moore.  Moore's motion to remove Waste Management as appellee in this appeal is DENIED.