# United States Court of Appeals for the Federal Circuit

---

**THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,**
*Plaintiff-Appellee*

**v.**

**GEN DIGITAL INC., FKA SYMANTEC CORPORATION, FKA NORTONLIFELOCK, INC.,**
*Defendant*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP,**
*Sanctioned Party-Appellant*

---

2024-1244

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 3:13-cv-00808-MHL, Chief Judge M. Hannah Lauck.

---

Decided: March 11, 2026

---

JEFFREY B. WALL, Sullivan & Cromwell LLP, Washington, DC, argued for plaintiff-appellee. Also represented by OLIVER ENGEBRETSON-SCHOOLEY, MORGAN L. RATNER; GARRARD R. BEENEY, STEPHEN J. ELLIOTT, ALEXANDER N. GROSS, DUSTIN GUZIOR, New York, NY.

PAUL D. CLEMENT, Clement & Murphy, PLLC,

Alexandria, VA, argued for sanctioned party-appellant. Also represented by JOSEPH DEMOTT, C. HARKER RHODES, IV.

---

Before DYK, PROST, and REYNA, *Circuit Judges.*

DYK, *Circuit Judge.*

The Trustees of Columbia University in the City of New York ("Columbia") brought suit against Gen Digital, Inc., which markets the Norton software brand, ("Norton") asserting infringement of several patents, including United States Patent Nos. 8,601,322 (the "'322 patent") and 8,074,115 (the "'115 patent"), and seeking correction of inventorship as to United States Patent No. 8,549,643 (the "643 patent") owned by Norton. In a companion case, No. 2024-1243, Norton appeals the judgment of infringement with respect to the '322 and '115 patents. In a separate opinion issued today in that companion case, we address issues concerning patent ineligibility, infringement, foreign sales, enhanced damages, and attorneys' fees. This case involves an appeal by Norton's counsel, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn"), from a finding of civil contempt. The contempt issue arose in connection with Columbia's claims for correction of inventorship of the '643 patent owned by Norton, claims not involved in the other appeal.[1]

The '643 patent issued on October 1, 2013, listing Norton employee Darren Shou as the sole inventor. Columbia contended that Columbia professors Salvatore Stolfo and Angelos Keromytis were the true and only inventors of the

---

[1]    As discussed below, based on a jury verdict, the district court entered a judgment for correction of inventorship of the '643 patent, and Norton did not appeal that determination.

'643 patent, or in the alternative, joint inventors of the patent with Mr. Shou. In connection with the inventorship issue, Columbia argued that Norton's counsel, Quinn, improperly represented both Norton and a former employee of Norton, Marc Dacier, and improperly prevented Dr. Dacier from testifying in support of Columbia's inventorship claims.

The district court agreed that Quinn had a conflict of interest, which it concluded automatically terminated the representation of Dr. Dacier, and ordered Quinn to disclose its allegedly privileged communications with Dr. Dacier. Quinn refused, and the court found Quinn in civil contempt, imposing as a sanction a negative inference that Dr. Dacier would have testified that Quinn acted improperly, supporting Columbia's motion for enhanced damages and attorneys' fees for infringement of the '332 and '115 patents in the companion case.

We reverse the order requiring Quinn to disclose its communications with Dr. Dacier and the order holding Quinn in contempt.

As a result, in the companion case we also set aside the district court's award of enhanced damages and attorneys' fees since they rested in part on the improper contempt finding.

BACKGROUND

I

As discussed in detail in our opinion in the companion case, in December 2013, Columbia brought suit against Norton in the Eastern District of Virginia claiming infringement of the '322 patent and '115 patent and seeking correction as to inventorship of the '643 patent. After trial, the jury found infringement of the '322 and '115 patents and rejected Norton's affirmative defenses. Norton appealed the infringement judgment as to the '322 and

'115 patents.  That appeal is resolved in the companion case.

Relevant to this case, Columbia asserted that Dr. Stolfo and Dr. Keromytis were the only inventors of the '643 patent, or alternatively that they were joint inventors with Mr. Shou.  After trial, the jury returned a verdict that Dr. Stolfo and Dr. Keromytis were joint inventors of the '643 patent, and the district court granted judgment accordingly.  Norton does not challenge the inventorship determination as to the '643 patent.  However, in the course of post-trial proceedings, the district court found Quinn, Norton's counsel, in civil contempt.  In this appeal, Quinn challenges the contempt finding.  The complex and somewhat confusing background of that determination is as follows.

## II

During discovery, with respect to the inventorship claim, Norton identified an employee, Dr. Dacier, as a potential witness to the development of the invention described in the '643 patent.  Dr. Dacier soon after left Norton.  However, Columbia sought to depose Dr. Dacier.  As is common with respect to former employees, Norton offered to provide counsel to Dr. Dacier.  Norton's counsel, Quinn, and Dr. Dacier entered into a retainer agreement.  The agreement provided that Quinn's representation of Dr. Dacier was "in connection with litigation between [Norton] and [Columbia] pending in the Eastern District of Virginia" and that it "would include, for example, representing [him] in connection with [his] production of documents or any deposition in connection with this litigation."  J.A. 16566.[2]  The agreement also provided that Quinn's

---

[2]    Citations to the J.A. refer to the Joint Appendix filed by the parties in the companion case.  No. 24-1243, Dkt. No. 59.

representation of Dr. Dacier was "conditioned on the fact that [he] and [Norton] share a common interest in the matters," and that Dr. Dacier may terminate the relationship at any time "by providing [Quinn] with written notice to that effect." J.A. 16567. Quinn advised Columbia's counsel that Dr. Dacier was represented by Quinn and that (as he was no longer a Norton employee and resided in France) he was not subject to any subpoena issued by the district court. Quinn stated that Dr. Dacier was nonetheless willing to appear for a deposition, which was held on August 19, 2014, in Belgium.

During Dr. Dacier's deposition, he testified as to the development of the invention relied on in Mr. Shou's patent application, including activities involving the Columbia professors (who claimed to have invented the technology). Dr. Dacier did not testify directly that the Columbia professors made inventive contributions to the invention claimed in Mr. Shou's '643 patent application, but Columbia nonetheless later argued, and the district court agreed, that his testimony supported Columbia's inventorship theory.

After the deposition, the case was stayed for several years. Issues of infringement were litigated on appeal when Columbia conceded that the district court's initial claim construction precluded its infringement claims and appealed. We overturned the construction of one of the terms and remanded for further proceedings. *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1370–71 (Fed. Cir. 2016). Meanwhile, Norton sought *inter partes* review of the asserted patents, which resulted in the Patent Trial and Appeal Board's finding unpatentable many of the remaining claims, leaving claims 2, 11, and 27 of the '322 patent and claim 2 of the '115 patent to be resolved in further district court proceedings. Nothing in the first appeal or the *inter partes* review proceedings affected the '643 patent inventorship claims. When the case resumed in the district court in August of 2018, Quinn once again

identified Dr. Dacier as a potential witness in connection with the inventorship claims and instructed Columbia's counsel that Dr. Dacier should be contacted only through Quinn.  J.A. 14306–07.

However, while the case was stayed, Dr. Keromytis and Dr. Dacier, in either 2017 or 2018, met each other at a professional event and discussed the litigation. Dr. Keromytis's declaration states that he told Columbia's counsel that Dr. Dacier expressed "he was sorry about what Norton had done with the decoy technology" that formed the basis of the '643 patent, that "he was against Norton's decisions with respect to patenting [the Columbia professors'] technology," and that "he thought what [Norton was] doing was wrong,"[3]  suggesting in the district court's view that "Norton improperly omitted the professors as inventors or co-inventors of the '643 patent," J.A. 52.  Based on a later conversation that took place in 2019, Dr. Keromytis stated that he believed that Dr. Dacier would testify on Columbia's behalf at trial regarding the inventorship claim.

On October 28, 2019, Dr. Keromytis, via email, connected Columbia's counsel with Dr. Dacier for the purpose of determining if Dr. Dacier was still represented by counsel.  Columbia's counsel then reportedly had a telephone call with Dr. Dacier during which Dr. Dacier "unequivocally answered that he was not represented by counsel." J.A. 14322.  Columbia then asked if he would be willing to testify at trial, and Dr. Dacier stated that he wanted to talk to Norton and his daughter, a lawyer, first.

Thereafter in November 2019, Dr. Dacier sent an email to a Norton employee, Hugh Thompson, who was not a

---

[3]     Exhibit BB to Columbia's Opp. to Mots. in Limine at 2, *Trs. of Columbia Univ. v. Symantec Corp.*, No. 3:13-cv-808 (E.D. Va. Mar. 4, 2022), Dkt. No. 803-29.

lawyer, in which Dr. Dacier stated that Columbia's counsel reached out to him and that he wished to "obtain . . . confirmation that [Norton] does not consider that the lawyer . . . present at [his] deposition is still representing [him]" and to confirm that he was "not bound by any kind of contract or obligation with [Norton] that would prevent [him] from responding positively to the request to attend the trial."[4]    Dr. Dacier reportedly received no response

---

[4]    The entire message stated:

Dear Hugh,

my [sic] name is Marc Dacier.  I'm a former Symantec employee.  I used to be senior director within Symantec Research.  This was before your arrival within the company.  I was managing teams in France, Ireland and in the US (Herndon).

I'm sending you this note regarding the lawsuit that Columbia University has filed against Symantec in 2013, the trial date of which has now been defined as end of May 2020.

This lawsuit is related to a patent filed by Darren Shou who was working for me at that time, patent filed without me knowing it.

I have been asked to depose in 2014 as a fact witness.  My testimony has been recorded in Brussels, Belgium.  Symantec had sent an attorney to assist me.  For me this was an old story and I had almost forgot about it.

Now, I have been contacted by the lawyers from Columbia University, asking me to come in May to testify as a fact witness at the trial ; to repeat what I have already said in 2014.

They have asked me if I had a counsel representing me. I think I do not but, to avoid any problem, I prefer to reach out to you to obtain your confirmation that Symantec does not consider that the lawyer, paid by Symantec, that was present at my deposition is still representing me, since I have left the company. I am not asking for Symantec to represent me. I am just asking if Symantec considers that it does because, if yes, these lawyers are only allowed to speak to your lawyers and not to me directly.

Also, assuming Symantec lawyers are not representing me, I would like you to confirm that I'm not bound by any kind of contract or obligation with Symantec that would prevent me from responding positively to the request to attend the trial. As I said, I don't want any trouble and want to make sure that I'm not violating any rule or law that I would not be aware of.

I am sorry to ask you these questions but all the people I used to interact with such as the CEO or the past CTO(s), are now gone. Darren Shou is, as I understand it, your direct report and I suppose that you are looking into this lawsuit and its consequences. This is why I choose to write to you.

Thank you very much for taking the time to respond to me. In the absence of any reply, I will consider that you implicitly replied negatively to my both requests, ie Symantec is not representing me and I'm free to go testify.

All the best

M. Dacier

J.A. 14326–27.

from Dr. Thompson despite following up. In a later email sent April 10, 2020, Columbia's counsel stated to Quinn that Dr. Dacier met with Columbia's counsel in February 2020 to discuss his testimony.

In March 2020, Columbia included Dr. Dacier on its witness list in preparation for trial. An email thread filed by Columbia shows that Quinn then sent an email to Dr. Dacier to inquire if he had communicated with Columbia. Dr. Dacier responded, confirming that he had communicated with Columbia after his emails to Dr. Thompson went unanswered. In-house counsel at Norton then emailed Dr. Dacier to confirm that Quinn still represented him. In a June 2020 declaration Dr. Dacier supplied to Quinn, he confirmed that Quinn represented him and continued to represent him in connection with the litigation. Columbia appears to have ceased communications with Dr. Dacier thereafter.

### III

In May 2020, Quinn sought sanctions against Columbia for contacting Dr. Dacier despite his being represented by counsel. In September 2021, the district court denied sanctions, finding "Columbia reasonably believed that Dr. Dacier was not represented by defense counsel." J.A. 17738. However, the district court concluded that "[i]t remains undetermined whether Dr. Dacier was or was not represented by Norton's attorneys in October 2019" when Columbia's counsel contacted him. J.A. 17738 n.3.

On October 21, 2021, Quinn represented to Columbia that Dr. Dacier, who moved to Saudi Arabia, had decided not to travel to the United States to attend the trial. Quinn thereafter emailed Columbia's counsel on November 18, 2021, to state that "Dr. Dacier has been informed of the [September 2021] order, including that the Court concluded he is represented by Norton's counsel," an inaccurate statement given that the representation issue was left "undetermined." Exhibit QQ to Columbia's Opp. to Mots.

in Limine at 2, *Trs. of Columbia Univ. v. Symantec Corp.*, No. 3:13-cv-808 (E.D. Va. Mar. 4, 2022), Dkt. No. 803-44.

Norton then moved *in limine* to exclude argument and comments related to Dr. Dacier's absence at trial. Columbia opposed and argued that it should be granted a missing witness instruction and that its witnesses, Dr. Stolfo and Dr. Keromytis, should be permitted to testify as to statements Dr. Dacier made to them under the residual hearsay exception in Federal Rule of Evidence 807 because "Dr. Dacier wanted to appear at trial to speak out against Norton's misconduct, and his current decision not to attend trial . . . was procured by Norton." J.A. 20827. On March 15, 2022, the district court denied Norton's *in limine* motion to exclude; granted Columbia's request for a missing witness instruction and to allow the Columbia professors to testify as to Dr. Dacier's statements; and *sua sponte* ruled on what it perceived as an ethical issue in the case.

First, based on Dr. Keromytis's declaration, the district court determined that there was a conflict of interest in Quinn's representation of Dr. Dacier because he expressed regret regarding Norton's conduct vis-à-vis the '643 patent and that the period of the purported conflict dated back to 2017. Second, the district court determined that the appearance of this conflict "void[ed] the retainer agreement" between Dr. Dacier and Quinn. J.A. 48. Third, the district court found that Quinn misrepresented the court's ruling by telling Dr. Dacier that the district court concluded that Quinn represented Dr. Dacier.

Finally, the district court ordered Quinn to "disclose on the record in writing any information garnered from Dr. Dacier during the period their representation of Dr. Dacier was a conflict" and to do so "no later than March 16, 2022"—one business day after the district court's order (the "Disclosure Order"). J.A. 55 n.7.

On March 16, 2022, Quinn filed a notice refusing to disclose any communications and asserting attorney-client

privilege.  Norton moved for reconsideration and a stay of trial to resolve the conflict issue, but the district court denied the motion.  Quinn then withdrew its representation of Dr. Dacier and submitted a declaration from a Quinn lawyer summarizing several interactions with Dr. Dacier.  For example, the declaration describes a conversation preceding Dr. Dacier's June 2020 declaration, stating "Dr. Dacier stated that he never intended to terminate Quinn Emmanuel's representation, confirmed that he wanted to continue to be represented by Quinn Emanuel in the above-captioned action, and stated that he was willing to sign a declaration attesting to that fact."  J.A. 35940.

Norton retained new counsel, Latham & Watkins LLP ("Latham"), to represent Norton at trial together with Quinn.  An email thread submitted by Columbia shows that Latham reached out to Dr. Dacier to encourage him to attend trial, but that he refused given the short notice.  In his email response to Latham, Dr. Dacier reported that Quinn "repeatedly told [him] that there was no need for [him] to do anything, that they did not want [him] to do anything, [and] that [his] testimony in Brussels [at the deposition] was all that was needed."  J.A. 35889.  He also stated that he had nothing additional to testify about beyond his deposition testimony, but that he considered that testimony to be "harmful for Norton's case," and that he "can see now why the Quinn team has done what they have done over the years, while pretending to 'represent' [him]."  J.A. 35887.

IV

Following trial, although Columbia had succeeded on its inventorship claim, Columbia continued to seek Quinn's compliance with the Disclosure Order to support Columbia's claim of litigation misconduct by Quinn that would support an award of enhanced damages for infringement of the '322 and '115 patents or attorneys' fees. Columbia also moved for a show cause order as to why Norton should not

be held in civil contempt for refusing to comply with the Disclosure Order.  Specifically, Columbia requested an evidentiary hearing to make a finding of contempt and "measured sanctions until compliance."  J.A. 43926.  Columbia then also moved for enhanced damages and attorneys' fees, again as to the theory that Norton's refusal to comply was litigation misconduct.

Without holding an evidentiary hearing, the district court found Quinn in civil contempt for failure to comply with the Disclosure Order and imposed as a sanction a negative inference that Quinn's conduct in the litigation was "egregious" for the purpose of enhanced damages and attorneys' fees (the "Contempt Order").  J.A. 98.  The district court stated that this sanction was for the "purpose of compensating the movant [Columbia] for the losses sustained as a result of the contempt."  J.A. 97.  Quinn appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Quinn argues that the Disclosure Order was not a valid decree because it improperly required Quinn to produce privileged communications and that the contempt finding should be reversed.  To establish civil contempt, under Fourth Circuit law, it must be shown by clear and convincing evidence that the alleged contemnor knowingly violated a "valid decree" that was in the opposing party's favor, to the detriment of the opposing party. *United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017); *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 145 (4th Cir. 2023) (citing *Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 101 (4th Cir. 2022)).  "[R]eversal of the underlying order ordinarily invalidates any civil contempt sanctions predicated thereon." *McLean v. Cent. States, Se. & Sw. Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985); *accord ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1357–58, 1357 n.8 (Fed. Cir. 2015) (citing *Worden v. Searls*, 121 U.S. 14, 26 (1887)).  When the disputed order requires the disclosure

of confidential information, this rule is especially important because "appellate courts cannot always 'unring the bell' once the information has been released." *See Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 342 (5th Cir. 2015). Therefore, "a party's good-faith claim of attorney-client privilege can serve as a valid defense to a finding of contempt." *See id.*; *accord In re Allen*, 106 F.3d 582, 608–09 (4th Cir. 1997) (reversing contempt order predicated on attorney's refusal to disclose privileged information).

## I.    PRELIMINARY ISSUES

Columbia does not dispute this general rule. However, Columbia raises preliminary arguments as to why we should not address the validity of the Contempt Order. First, Columbia argues that Norton forfeited its challenge to the validity of the Disclosure Order by failing to raise the issue in its opposition to Columbia's motion for an order to show cause. We do not agree. In the notice to the district court filed on March 16, 2022, in response to the Disclosure Order, Quinn challenged the validity of the Disclosure Order in part on invalidity, arguing that the district court could not require the disclosure of communications protected by the attorney-client privilege. Then, in opposition to Columbia's motion for an order to show cause, Quinn argued that it acted properly by "asserting the attorney-client privilege in response to the Court's March 15, 2022 order," before attempting to comply with the order without breaching its duties of confidentiality. J.A 43948. The district court also recognized that Quinn "claim[ed] the attorney-client privilege" when it "refused to comply" with the Disclosure Order. J.A. 78. Quinn did not forfeit the argument that the Disclosure Order was invalid.

Second, Columbia argues that Quinn was required to "request[] *in camera* review," i.e., revision of the district court's order so that it provided for *in camera* review rather than public disclosure. Appellee's Br. 82. Columbia cites

14    TRUSTEES OF COLUMBIA UNIVERSITY v. GEN DIGITAL INC.

no authority to support such a requirement, and a review of similar cases indicates there is no such requirement. *See Waste Mgmt. of Wash.*, 776 F.3d at 343 (order requiring disclosure of privileged documents was invalid despite no apparent request for *in camera* review of the privileged documents); *In re King's Daughters Health Sys.*, 31 F.4th 520, 527 (6th Cir. 2022) (recognizing that a non-party who "first disobey[s] [an] order and suffer[s] a contempt citation" may raise a privilege challenge to the order on appeal without suggesting that the parties move for reconsideration or *in camera* review (quoting *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 444 F.3d 462, 471 (6th Cir. 2006))). Quinn was entitled to challenge the validity of the order for public disclosure.

Third, Columbia argues that Quinn could not assert the attorney-client privilege without first contacting Dr. Dacier and determining whether he wanted to assert the attorney-client privilege. Generally, the proponent of the attorney-client privilege must show, *inter alia*, that "the privilege has been (a) claimed . . . by the client." *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)). Although "the client must claim the privilege" because "[t]he client is the holder of the attorney-client privilege," *id.* at 384 n.4 (citing *In re Grand Jury Procs.*, 727 F.2d 1352, 1355–56 (4th Cir. 1984)), that does not mean counsel may not assert the privilege on behalf of a client, *see United States v. Edgar*, 82 F.3d 499, 508 (1st Cir. 1996) ("A lawyer also has an obligation to assert privilege on behalf of a client."); *In re Sarrio S.A.*, 119 F.3d 143, 147 (2d Cir. 1997) (noting that privilege can be asserted by "one authorized to do so on the client's behalf"); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2009) ("The privilege belongs to the client, although an attorney may assert the privilege on the client's behalf." (citing *United States v. Smith*, 454 F.3d 707, 713 (7th Cir. 2006))); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 90

(3d Cir. 1992) ("Although the privilege belongs to the client . . . an attorney may assert the privilege on the client's behalf."); *United States v. Hankins*, 581 F.2d 431, 438 (5th Cir. 1978) ("[T]he attorney-client privilege may be asserted either by the client or by the attorney on behalf of the client . . . ."); *see also Swidler & Berlin v. United States*, 524 U.S. 399, 410–11 (1998) (counsel may assert privilege on behalf of deceased client).  Columbia asks us to require that counsel consult with the client and await a response before asserting the privilege on the client's behalf.  There is no such requirement.

Fourth, Columbia argues that any privilege was waived based on an email Dr. Dacier sent to both Columbia's counsel and Quinn explaining that he had been in contact with Columbia's counsel.  This email was not a waiver over all of Dr. Dacier's communications with Quinn regardless of the subject matter, and even if it were, the district court made no determinations that Dr. Dacier had waived any privilege.  Instead, it noted that Quinn asserted the privilege on his behalf.

## II.    THE VALIDITY OF THE ORDER

We turn to the issue of the Disclosure Order's validity.  There is no question that Dr. Dacier retained Quinn to represent him and that he did not terminate the relationship in writing as provided for by the agreement.  The district court had made no determination as to whether Dr. Dacier otherwise terminated the relationship.  The question is whether, as the district court held, the attorney-client privilege was automatically terminated based on Quinn's conflict of interest, such that Quinn could not assert a privilege "during the period [Quinn's] representation of Dr. Dacier

was a conflict." J.A. 55. The court later clarified that this period was "at least in 2017 through 2020."[5] J.A. 59 n.3.

Even if there were a conflict of interest that warranted disqualification, the district court erred in concluding that the conflict of interest automatically terminated the attorney-client relationship between Dr. Dacier and Quinn and eliminated the privilege. The relevant cases hold that the attorney-client privilege is not vitiated because of the existence of an attorney-client conflict. For example, in *Eureka Investment Corp. v. Chicago Title Insurance Co.*, the D.C. Circuit considered a case where a single attorney represented both an insured party and the insurer. 743 F.2d 932, 936–38 (D.C. Cir. 1984). There, the allegedly privileged communications "were made not only after the interests of [the parties] diverged, but after their common attorney knew they diverged." *Id.* at 937. The court held that those communications were still privileged, reasoning that the client's privilege "should not be defeated solely because the attorney's conduct was ethically questionable." *Id.* at 938. Similarly, in *In re Teleglobe Communications Corp.*, in-house counsel for a parent company discussed a legal issue with the in-house counsel for one of its subsidiaries prior to the subsidiary's bankruptcy. 493 F.3d 345, 354–55 (3d Cir. 2007). The court held that, although the parent's in-house counsel acted as attorney to both the parent and the subsidiary, and a conflict of interest arose between the two in bankruptcy proceedings, this conflict did not vitiate the privilege over communications between the parent and its in-house counsel. *Id.* at 381.

A contrary rule would be unfairly damaging to a good-faith client and would be tantamount to punishing the client for the lawyer's impropriety. *See* Va. R. Prof. Conduct,

---

[5]    The Disclosure Order itself inconsistently refers to statements that Dr. Dacier made in 2019 and his "2017-2019 comments." *E.g.*, J.A. 43, 47–49, 52.

Scope ("In reliance on the attorney-client privilege, clients are entitled to expect that communications within the scope of the privilege will be protected against compelled disclosure."); *see also* Restatement (Third) of Law Governing Lawyers §§ 31–32 (recognizing a lawyer may have a duty to withdraw from representation of a client but also noting that such a duty arising does not automatically terminate the representation). The existence of a conflict may subject the attorney "to disciplinary sanctions and malpractice liability," *see* Restatement § 31, cmt. a, but it does not vitiate the attorney-client privilege. *See also New Phx. Sunrise Corp. v. Comm'r of Internal Revenue.*, 408 F. App'x 908, 919 (6th Cir. 2010) ("[T]he fact that an *attorney* has a conflict of interest does not mean that the *client* forfeits the benefit of the attorney-client privilege."). Indeed, at oral argument, Columbia conceded that the privilege would exist until the client waived it.

Columbia offers one final argument: that the Disclosure Order should be sustained because it was an appropriate exercise of the district court's authority to determine if Quinn in fact represented Dr. Dacier during the period beginning in 2017. The district court indeed described the purpose of the order as "intend[ing] to eliminate confusion regarding Dr. Dacier's representation and willingness to testify at trial." J.A. 90. If the Disclosure Order were designed to resolve the representation issue, it would have been justified only if the court had ordered *in camera* production. The need to inquire as to the representation would not support public disclosure of the communications without resolution of the representation issue. Columbia recognized this at oral argument, conceding that the district court's order was "potentially problematic." Oral Arg. at 29:25–30.

Because we find that the Disclosure Order was invalid, it follows that it cannot be the basis for a finding of civil contempt. We therefore reverse both the Disclosure Order and the Contempt Order. We do not address the propriety

18    TRUSTEES OF COLUMBIA UNIVERSITY v. GEN DIGITAL INC.

of alternative sanctions for Quinn's conduct unrelated to the order to produce privileged material.

### III.    COLUMBIA'S MOTION TO SUPPLEMENT THE RECORD

Columbia has also moved to supplement the record with a new declaration from Dr. Dacier testifying that if he had been aware of the dispute over the Disclosure Order, he would have waived the attorney-client privilege protecting the communications and that he never changed his mind about being willing to testify.  However, this declaration was not considered by the district court in its proceedings.  The propriety of the district court's orders must rest solely on the record before it.  This is not the "rare instance[]" where "the circumstances of the case require" us to look beyond "the record presented at the court below." *See Biery v. United States*, 818 F.3d 704, 710–11 (Fed. Cir. 2016) (citing *Del. Valley Floral Grp. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1380 n.1 (Fed. Cir. 2010)).  We deny the motion.

### CONCLUSION

We reverse the Disclosure Order and the Contempt Order.

### REVERSED

### COSTS

No costs.